J. C. ANSLEY, *et al.*, *Plaintiffs in Error*, v. DORA GRAHAM, *et al.*, *Defendants in Error*.

Opinion Filed February 20, 1917.

1. Where the State and County are omitted from the description of the lands conveyed in a deed, but the lands are so described that they can be located by a surveyor, the fact that the grantor and grantee are described as being of a certain county and State, and the deed is acknowledged and recorded in that county, in the absence of anything to the contrary, the presumption is that the land is situated in the county and State where all the parties reside, and where the deed was executed, acknowledged and recorded.

2. If a surveyor, by applying the rules of surveying can locate the land, the description is sufficient; and a deed will be sustained if it is possible to ascertain and identify the land intended to be conveyed.

3. Where the evident intention of a grantor can be carried into effect by construing the word "her" before the word "heirs" in the *habendum* of a deed, to be intended for "their," such construction will be followed rather than one which defeats the clearly expressed intention of the grantor.

Writ of Error to Circuit Court for Duval County; George Couper Gibbs, Judge.

Judgment reversed.

*Axtell & Rinehart,* for Plaintiffs in Error;

D. M. *Gornto* and *Carter & McCollum,* for Defendants in Error.

BROWNE, C. J.—On August 26, 1915, plaintiffs in error, who were the plaintiffs below, brought suit in ejectment against the defendants in error, in the Circuit Court of Duval County. A plea of not guilty was filed, and on the trial the plaintiffs offered in evidence the deed under which they claimed title, as follows:

"This indenture, made this 17th day of October, A. D. 1901, between J. C. Greeley, as Trustee for Mellen C. Greeley, with power to sell, of the County of Duval, in the State of Florida, party of the first part, and Emma Tallack, during her natural life, then Mattie Ansley and her children, of the county of Duval, in the State of Florida, party of the second part,

"Witnesseth, that the said party of the first part, for and in consideration of the sum of One hundred and sixty Dollars, to him paid by the said party of the second part, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the said party of the second part, her heirs and assigns forever, the following described land, to-wit:

"Part of the Sand Hills Track, also being part of the Willie Brown Tract, being in William Ballard East line 206 feet North of the base line, thence continue North in the said Ballard line 588 feet, thence Easterly at right angles with first line 330 feet, thence Southerly parallel with first line 588 feet, thence Westerly 330 feet to the place of beginning, containing 4 acres.

"And the said party of the first part does hereby fully warrant the title to said land and will defend the.

same against the lawful claims of all persons whomsoever.

"In witness whereof, the said party of the first part has hereunto set his hand and seal the day and year first above written.

"Signed, sealed and delivered
 in the presence of:
 "Carrie Harrison,
 "Allan Greeley.

"J. C. Greeley, as (Seal)
Trustee for Mellen C. Greeley.

"State of Florida,
"County of Duval.

"I hereby certify, that on this 17th day of October, A. D. 1901, before me, Allan Greeley, Notary Public, personally appeared J. C. Greeley, as Trustee for Mellen C. Greeley, to me known to be the person described in and who executed the foregoing conveyance to E. Tallack, and acknowledged the execution thereof to be his free act and deed for the uses and purposes therein mentioned.

"Witness my signature and official seal at Jacksonville, in the County of Duval and State of Florida, the day and year last mentioned.

"(Notarial Seal)   Allan Greeley,
  "Notary Public, State of Fla. at Large.

"I certify that on this 19th day of Oct. 1901, I recorded the foregoing instrument in the Public Records of Duval County, Florida.

"(Court Seal)  P. D. Cassidey, Clerk Circuit Court,
    "By E. C. Clark, D. C."

Whereupon the defendants objected to its introduction on the following grounds:

"1.   It appears to have been executed under a power and the power is not first shown.

"2.   The deed is vague and indefinite in describing the land and does not furnish the means of identifying the tract intended to be conveyed, and is, therefore, void for uncertainty in description.

"3.   The deed is vague and uncertain as to the person taking the grant, and it is impossible to determine therefrom who takes what estate if any is granted.

"4.   The granting clause is repugnant to the introductory clause, and, therefore, the deed is void for repugnancy.

"5.   The fee simple estate is granted to Emma Tallock and her heirs, and the plaintiffs have not shown that they derived title under Emma Tallock.

"6.   The fee simple estate is granted to Emma Tallock and Mattie Ansley and her children.

"7.   The fee simple title is granted to Emma Tallock and Mattie Ansley and her children and thus is created an estate in co-tenancy. The plaintiffs, as tenants in common, have not shown that ejectment lies as against their co-tenants in this cause."

To these objections the court made the following order: "I sustain the objections of the defendants to the introduction of this deed. I have construed the deed in the particular instance. Had there only been the first objection, of showing the power, I would have permitted the deed to go in. If you had failed to show possession, then I should have sustained the objection on that first ground. If you had relied on your documentary title to the land and had not in addition thereto shown possession. Other objections having been raised to this particular deed, made it necessary for the court to construe the deed. The court has construed the deed to

mean just as stated in the granting clause, that the deed is to the second party, and that the second party is Emma Tallock, her heirs and assigns."

The plaintiffs then offered to prove that Emma Tallock went into possession of the property about the date of the deed and remained in possession until her death in December, 1909; that Mattie Ansley, together with her husband and children, lived upon the land with Emma Tallock for two or three years, beginning at or about the date of the deed; that Mattie Ansley died during the year 1908; that she left surviving her, her husband, J. C. Ansley, and her children, Ernest M. Ansley, Elbert O. Ansley, John M. Ansley and Millie May Ansley; that the real parties in interest, E. P. Axtell and C. D. Rinehart, have by proper conveyances acquired the interests of the said nominal plaintiffs in this cause; that the plaintiffs offered to prove, by a surveyor, that the description in said deed is sufficient to locate the land and that the land therein described can be located by a surveyor from the description contained in the deed, when the said description is considered with reference to the land of William Ballard and the land known as the Sand Hills Tract, which are mentioned in said deed.

The defendant objected to the introduction of this evidence because it was irrelevant and immaterial, and upon this objection being sustained, the plaintiff moved for a non-suit with bill of exceptions, and sued out writ of error to this court, and assigns as errors the refusal of the trial judge to permit the introduction of the deed from J. C. Greeley as Trustee for Mellen C. Greeley to Emma Tallock and others, and his refusal to allow plaintiffs to prove the facts set forth above.

In ruling on the objection to the introduction of the deed, the court below stated that if there had only been

the first objection, he would have permitted the deed to be introduced, subject to subsequent proof which would establish its relevancy. In view of the fact that the attorney for defendant in error discusses his first objection, and as the case will go back for a new trial, we feel it incumbent upon us to pass upon this objection, and we find that the ruling of the trial judge was correct. The judge did not rule definitely on the second objection, which was that the description of the land sought to be conveyed did not furnish means of identifying the tract, and as this question may arise in another trial, it is necessary here to determine its merits. The description is as follows: "Part of the Sand Hills Tract, also being part of the Willie Brown Tract, being in William Ballard East line 206 feet North of the base line, thence continue North in the said Ballard line 588 feet, thence Easterly at right angles with first line 330 feet, thence Southerly parallel with first line 588 feet, thence Westerly 330 feet to the place of beginning, containing 4 acres." This description seems sufficient to identify the land; the grantor and grantees are described as being of the county of Duval and State of Florida, and the deed is recorded in that county, and in the absence of anything to the contrary, the presumption is that the land is situated in the county and State where all the parties reside, and where the deed was executed, acknowledged and recorded.

In the case of Horton v. Murden, 117 Ga. 72, 43 S. E. Rep. 786, the land was referred to as "my lot 50 front of Fortune St., running back 155 feet, joining on the North side by Murden and on the South side by Horton." The State, county and city in which the lot was located were not referred to. It was claimed that the instrument was void for want of adequate description. The

document was dated "Atlanta, Ga.," and the court said: "in the absence of anything to the contrary, it will be presumed that Fortune·St. was in the City of Atlanta."

In Butler v. Davis, 5 Neb. 521, objection was made to admission of a deed because the description was void for uncertainty, and did not describe any property. The land was described as the South half of the Northwest quarter and the North half of the Southwest quarter of Section thirty-five, in township fifteen North of range twelve east, without designating the County and State in which the lands were situated. The court held that the deed was properly admitted in evidence, and based its decision on the fact that the deed was signed and acknowledged in Douglas County, and immediately thereafter filed for record in the office of the Register of Deeds of that county.

If there is a Sand Hills Tract, or a Willie Brown tract, or a William Ballard place, which can be located, the land sought to be conveyed seems easily identified. In the case of Lente v. Clarke, 22 Fla. 515, this court held that a promise to sell "my forty near the Garrison Lands in Hernando County" was sufficient description to identify and furnish means of finding the land. The plaintiff herein offered to prove, by a Surveyor, that the description in the deed is sufficient to locate the land and that the land therein described can be located by a surveyor from the description contained in the deed. Even if a layman might not have been able to locate the land—although we see no reason why not, if the Sand Hills Tract, the Willie Brown Tract, and the Ballard place, are sufficiently well known in the county to be identified—still, the offer of the plaintiff to prove by a surveyor that it could be located, brought it within the rule laid down by this court in Campbell v. Carruth, 32

Fla. 264, 13 South. Rep. 432; and followed in Hoodless
v. Jernigan, 46 Fla. 213, 35 South. Rep. 656; Walker
v. Lee, 51 Fla. 360, 40 South. Rep. 881, and in Conroy
v. Woodcock, 53 Fla. 582, 43 South. Rep. 693, that
"if a Surveyor, by applying the rules of surveying, can
locate the land, the description is sufficient; and the deed
will be sustained if it is possible from the whole de-
scription to ascertain and identify the land intended to
be conveyed."

This brings us to the other objections which the
trial judge considered together and construed the deed
to mean that it is "to the second party, and that the
second party is Emma Tallock, her heirs and assigns."
To reach this conclusion, he had to treat the words "to
Mattie Ansley and her children," as surplusage, and
make no attempt to reconcile all parts of the instrument.

There has been much discussion by courts of the
value of the relative position of conflicting clauses in
deeds, some holding to the old rule that the first of two
repugnant clauses shall be given effect, and others that
this rule will only be applied when the premises and the
*habendum* are irreconcilable, and it does not appear from
the other parts of the instrument which is intended to
be controlling. The modern and generally accepted rule
is thus discussed in Utter v. Sidman, 170 Mo. 284, 70
S. W. Rep. 702: "Numberless other cases could be
cited bearing upon the questions here involved, but the
foregoing are sufficient to illustrate the intricacies, the
pitfalls, and the obstacles that the conveyancers of olden
times encountered, and that the courts had to grapple
with. They are interesting and instructive, but they are
not all-controlling nowadays. Then great care was ob-
served to confine each part of a deed to its assigned
function. The several parts of the instrument were given

an importance and controlling meaning, and the place in the instrument where the meaning of the testator was to be expressed was considered of the gravest importance. The premises included all that was contained in the deed preceding the habendum, and embraced the names of the parties, such recitals as were deemed necessary, the consideration, and the description of the property. Then followed the habendum, the tenendum, the reddendum, the conditions, the warranty, the covenants, and the conclusion. I Devl. Deeds (2nd Ed.), Sec. 176. No one provision was allowed to impinge on the province of another. The general rule was that, 'if there be a repugnancy, the first words in a deed and the last words in a will shall prevail.' Sir James Mansfield, C. J., in Leicester v. Biggs, 2 Tault. 113. In short, that a grantor might convey as he pleased, and his intention and wishes would be observed by the courts, but with this qualification: that he must express his intention in set and technical language, and at the proper places, and in the right order and clause of the deed. Failing to do so, the courts did not feel called on to bother about his intention, but took what he said first as expressing conclusively his intention and discarded everything else as void for repugnancy. Such a rule of construction made it almost impossible for anyone except a very expert conveyancer to draw an instrument that would stand the test of the rule, and likewise made it very easy for the courts in construing complicated instruments; but it is not so clear that the real intention of the grantor was ascertained or effectuated. The modern rule, which prevails in this State, is much simpler, and much more calculated to carry out the wishes of the grantor. The intention of the grantor, as gathered from the four corners of the instrument, is now the pole star of construction. That intention may be

expressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart it; and the court will enforce it no matter in what part of the instrument it is found."

In construing deeds specific and particular words and expressions will control over those more general. The grantor in this case seemed to have had a very clear and fixed intention as to the disposition of the property, and expressed such intention specifically and particularly; that is, to "Emma Tallock during her natural life, then to Mattie Ansley and her children." To hold that by the use in a subsequent part of the deed of technical words found in the statute, of which he may not, and probably did not, know the meaning and effect, he defeated his own intention, which is expressed in words so clear and simple that a child could understand them, would do violence to all rules of construction.

The attorney for defendants in error contends that to so construe the deed that Emma Tallock had only a life estate, and that the fee was granted to Mattie Ansley and her children, "would do violence to grammatical construction." To construe the deed otherwise would do violence to the clearly expressed intention of the grantor, even if such intention is not grammatically expressed. "*Mala grammatica non vitiat chartam*, neither false Latin, nor false English, will make a deed void when the intent of the parties doth plainly appear." Sheppard's Touchstone, 87. "The manifest intention of the grantor will prevail over the doubts which might be raised by strict grammatical construction." May v. May, 7 Fla. 207, 68 Amer. Dec. 431. So far as the instrument under consideration is concerned, any interpretation placed upon it will do violence to grammatical construction.

The deed under consideration is in the form of a war-

ranty deed, provided for in the Florida statute, except that in the second paragraph the words "in hand" are omitted, and "his" is changed to "her." The blank spaces in the statutory form found in Chapter 4038, Acts of 1891, are for the date, names of parties, county and State, amount of consideration, and description. The grantor knew who were to be the grantees, and the quantity of the estate he intended to convey to each, and he did what was the most natural thing for one not an experienced conveyancer, he followed the names of the grantor and grantees, with the estate each was to take under the deed. We do not see how an unskilled scrivener could have more clearly shown his intention than the grantor did in this instance.

In McNair & Wade Land Co. v. Adams, 54 Fla. 550, 45 South. Rep. 492, this court said: "In construing the deed the design of the maker must be gathered from the whole instrument. We have the right to look to the subject matter embraced in the instrument, and to the intention of the parties and the conditions surrounding them. If clauses in the instrument are repugnant to each other they must be reconciled if possible, and the intent, and not the words,' is the principal thing to be regarded. Stewart v. Preston, 1 Fla. 10; Fry v. Hawley, 4 Fla. 258; First Nat. Bk. of Florida v. Savannah, F. & W. Ry. Co., 36 Fla. 183, 18 South. Rep. 345; 42 So. 457; Hall v. Eastman, Gardner & Co., Miss. 43 South. Rep. 2; Henderson v. Mack, 82 Ky. 379; Langley v. Owens, 52 Fla. 302, 42 South. Rep. 457."

"A deed should be construed to make every part of it effective if possible." Black v. Skinner Mfg. Co., 53 Fla. 1088, 43 South. Rep. 922.

We cannot see that there is such a repugnance or contradiction in this deed as requires any part of it to be ig-

nored. There is some slight ambiguity, but it is not such as is incapable of satisfactory elucidation. The grantor apparently knew that he wàs "the party of the first part," and that the grantees should be designated the party or parties "of the second part." He was not, however, familiar with the formal parts of a deed of conveyance, and did not know that it was unusual to designate the quantity of the estate conveyed when naming the parties, but whatever may have been his ignorance in other respects, he had a clear and positive knowledge of the parties who were to receive the property conveyed, and what interest or estate he intended for each to take, and with that dominant thought and intention, he named their respective estates when he wrote their names, to-wit: "Emma Tallock during her natural life, then Mattie Ansley and her children, of the county of Duval in the State of Florida, party of the second part."

The next clause in the deed reads: "Witnesseth, that the said party of the first part, for and in consideration of the sum of One hundred and sixty dollars, to him paid by the said party of the second part, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the said party of the second part, her heirs and assigns forever, the following described land, to-wit:"

In naming Emma Tallock, and Mattie Ansley and her children, he designates them as "party" of the second part, both in the premises and in the granting clause. To whom then does he refer when he says "her heirs and assigns forever?" To say that he refers to Emma Tallock, would make the grantor contradict himself and defeat his avowed purpose and give to her in fee simple what he said she should have "during her natural life." Moreover, we would have to reject the words "then Mattie Ansley and her children," as surplusage. If on the con-

trary we construe it to mean Mattie Ansley and her children, we give life and meaning to every part of the instrument.

"One of the most important rules in the construction of deeds, is so to construe them that no part shall be rejected. The object of all construction is to ascertain the intent of the parties, and it must have been their intention to have some meaning to every part. It never could be a man's intention to contradict himself; therefore we should lean to such a construction as reconciles the different parts, and reject a construction which leads to a contradiction." Wager v. Wager, 1 S. & R. (Pa.) 374; Prior v. Quackenbush, 29 Ind. 475; Carson v. McCaslin, 60 Ind. 334.

It is contended that because the grantor used the singular pronoun "her," he did not mean Mattie Ansley and her children as the parties who were to take the estate in fee simple upon the death of Emma Tallock. If he had used the plural pronoun "their," ambiguity would still have resulted, and in attempting to follow the statutory form of a deed, after having emphatically named the grantees, and stated the estates they were to take, he was led into a situation where he could not escape ambiguity, but he placed as a pole star to guide us to his intention, the words, "Emma Tallock during her natural life, then Mattie Ansley and her children."

In the case of Sease v. Sease, 64 S. C. 216, 41 S. E. Rep. 898, a deed was construed which contained in the granting clause the words "unto Esther C. Sease and her children," and in the *habendum* the words "unto Esther C. Sease and her children, her heirs and assigns forever." The court in that case said: "It is impossible to construe the deed so as to give force and effect to all its parts without changing the phraseology in some respects. The ap-

pellant contends that the intention of the grantor can be carried into effect by construing the word 'her' before the word 'heirs' in the *habendum* of the deed, to be intended for the word 'their,' so that it would read, "* * * unto the said Esther C. Sease and her children, "their" heirs and assigns * * *'. If, by construing a word to be intended for another word, effect can then be given to every part of a deed, that construction will be preferred to one which not only changes the meaning of a word, but likewise refuses to give any force and effect whatever to certain other words of the deed. This effect can be accomplished by construing the word 'her' to be intended for 'their.' "

In the case of Keith v. Perry, 1 DeSaus. (S. C. Eq), 351, the word "her" was construed to mean "their," to give effect to the instrument. Under our construction of the deed, that it gave a life estate to Emma Tallock, with remainder over to Mattie Ansley and her children, the sixth and seventh objections were not well taken, and afford no grounds for excluding the deed from being introduced in evidence.

The second assignment of error relates to the ruling of the court in refusing to allow the plaintiff in error to make proof of certain facts set forth in his offer. The admissibility of the matters which plaintiff in error offered to prove depended upon whether or not the Circuit Judge was correct in his construction of the deed. We find that he was not, and that the deed should have been admitted in evidence, and that the court below erred in executing it. It therefore follows that he erred in refusing to allow the plaintiff to make proof of the matters offered.

The case is reversed, and remanded to the court below for further proceedings in accordance with this opinion.

26

TAYLOR, SHACKLEFORD, WHITFIELD and ELLIS, JJ., concur.