MINER, Judge.
In this appeal, we review the trial court’s order granting summary final judgment in favor of defendant/appellee in a property dispute. For the reasons that follow, we reverse the judgment appealed from.
By a Bill of Sale and Easement dated February 14, 1978, appellee, Florida East Coast Railway (“FEC”) acquired from Seaboard Coast Line Railway (“Seaboard”)
a certain segment of railroad trackage, to include ballast, grading, rail, angle bars, tie plates, drainage structures, fastenings, cross ties and other appurtenances, used in the construction of the said segment of trackage at Jacksonville, Duval County, Florida, described as follows ....
(Emphasis added.) The segment of property was approximately 5,770 feet in length. In addition to the trackage and appurtenances, FEC received an easement:
[T]o the said Florida East Coast Railway Company, for operating and maintaining the said 5,770 foot segment of track hereby conveyed, a non-exclusive perpetual easement of right of way, said right of way granted being approximately 30 feet in width....
Appellant, Lee Mcllvaine, acquired by deed from Seaboard on March 14, 1984:
A strip of land 60 feet in width,, i.e., 30 feet wide on each side of the center line thereof_
To have and to hold said premises unto grantee in fee simple forever; SUB *464 JECT, However, to reservations, conditions, restrictions and easements of record, or apparent from an inspection of the premises, including but not limited to Interstate 95 over and across said strip of land. SAVING AND EXCEPTING, the railroad track and appurtenances thereto located on said strip of land, which railroad track is owned by Florida East Coast Railway Company, as covered by Bill of Sale and Easement dated February 1⅛, 1978, from Seaboard Coast Line Railroad Company (now Grantor) to Florida East Coast Railway Company.... SUBJECT ALSO to the easement granted Florida East Coast Railway Company and Seaboard Coast Line Railway Company (now Grantor) by said document dated February 14, 1978.
(Emphasis added.)
Along the southern boundary of Mcll-vaine’s 60 foot wide strip is a concrete platform or walkway. The platform is approximately 800 feet long, 10 feet wide, and straddles the length of the Mcllvaine-FEC property line. The parties stipulated that the northern 5 feet of the platform is within Mcllvaine’s 60 foot strip, but is also within FEC’s easement. The southern 5 feet is located entirely upon FEC property. Attached to this platform is a heavy-duty “butterfly” shelter, which is also evenly divided lengthwise. Finally, the platform houses the entrance to an underground tunnel which again, is evenly divided.
On June 5, 1986, an attorney representing Mcllvaine sent a letter to FEC’s President, Raymond W. Wyckoff, complaining that on and off since August 1985, FEC had been demolishing the platform and shed, and sealing the tunnel entrance. In a June 25 letter, FEC responded that the platform and shed were appurtenances conveyed to FEC and excepted from Seaboard’s conveyance to Mcllvaine. In addition, the structures were located within FEC’s easement and their removal was necessary to provide proper drainage for the track. According to FEC, the tunnel was sealed to block unauthorized access by trespassers and derelicts.
On July 9, 1986, appellant filed a complaint seeking a declaratory judgment as to the parties’ rights in the platform, shed, and tunnel entrance. Shortly before the trial date, the parties submitted a joint motion for summary judgment asking the court to resolve three issues: (1) whether the walkway, shed and tunnel were owned by FEC; (2) whether FEC’s easement gave it the right to remove the walkway and shed and fill in the tunnel entrance, and (3) whether either party had the right to remove or alter these structures. Briefs were submitted addressing these issues.
The trial court found that the walkway, shed and tunnel entrance constituted appurtenances to FEC’s trackage. The court reasoned that the structures were “clearly incidental to, or accessories of, the railroad track.” More importantly, the court found that the structures were conveyed to FEC by the 1978 Bill of Sale and Easement. Appellant had argued that the language in the Bill of Sale and Easement only gave FEC the appurtenances that were used in the construction of the track. The trial court rejected this argument noting the presence of a comma separating the word “appurtenances” from the limiting phrase “used in the construction.” In addition, the court noted that appellant’s 1984 deed contained a restriction which stated that FEC owned the railroad track and appurtenances located on Mcllvaine’s strip of land.
The court further found that irrespective of the conveyance of the structures as appurtenances, FEC's easement gave it the right to remove the walkway and shed and to close the tunnel entrance. The court noted that right of way easements held by railroads are construed to confer more rights upon the holder than ordinary easements. Because the railroad is held to a high degree of care in transporting goods and people, the carrier is granted what is essentially exclusive possession of its easement so that it can meet its safety obligations. The court found that FEC’s actions were motivated by safety; the walkway and shed were removed to provide drainage, and the tunnel entrance was closed to exclude trespassers. Concluding that FEC was justified in its actions, final *465 judgment was entered. This appeal ensued.
Mcllvaine raises two issues on appeal. First, he urges that the trial court erred in holding that the portion of the passenger ramp, shed and tunnel located on his land were granted to FEC as appurtenances. We agree.
The trial court read the 1978 conveyance from Seaboard to FEC as including the platform, shed and tunnel entrance as “appurtenances” to the conveyed stretch of trackage. To support this reading, the trial court relied upon the presence of a comma which, if given effect, would leave the phrase “other appurtenances” unmodified by the phrase “used in the construction of the said segment of trackage”. In its entirety, this portion of the deed stated that FEC would receive
a certain segment of railroad trackage, to include ballast, grading, rail, angle bars, tie plates, drainage structures, fastenings, cross ties and other appurtenances, used in the construction of the said segment of trackage....
(Emphasis added.)
It is apparent that by giving effect to the comma, the trial court has rendered meaningless the phrase “used in the construction.” If this phrase does not refer to the term “appurtenances” which precedes it, then there is nothing for it to modify. It is a well established rule of construction that effect should be given to every part of a deed. See Ansley v. Graham, 73 Fla. 388, 74 So. 505 (1917). In addition, it is a widely accepted principle of construction that punctuation in a deed is ineffective to control its construction as against the plain meaning of the language used in the instrument. See 19 Fla.Jur.2d Deeds § 118 (1980); 23 Am.Jur.2d Deeds § 231 (1983). When the comma is ignored, the emphasized portion becomes a catchall which serves to classify the items that are specifically mentioned as well as limit those items that could possibly be included. Thus, it is apparent that rail, cross ties, fastenings, and the other specifically mentioned items can all be classified as items used in the construction of the trackage; in addition, any unenumerated items sought to be included by the catchall must also fit within this classification. Of course, FEC does not assert that the butterfly shed, passenger ramp and tunnel entrance were used in the construction of the trackage.
In holding that the butterfly shed, passenger ramp and tunnel entrance were within the definition of “appurtenances,” the trial court stated:
On the first issue concerning ownership of the walkway, shed and tunnel, the first question is whether they constitute appurtenances to the railroad track or trackage. The walkway, shed and tunnel were clearly incidental to, or accessories of, the railroad track. Without the railroad track, these items were of no use. They had no purpose except that derived from the existence of the railroad track.
This observation rests upon a very broad and, we believe, unwarranted definition of appurtenance. Both of the conveyances in the case at bar were part of Seaboard’s sale of its holdings in Jacksonville’s old railroad yard. Everything that was a part of the yard in one way or another had its purpose “derived from the existence of the railroad track.” This does not mean, however, that the party holding the right to use the trackage also owned everything else in the yard as appurtenances.
We find that the proper definition of appurtenance is much more limited. Although appellant agrees that an appurtenance is an accessory or incident to the conveyed parcel, he would also require that the appurtenance be located upon the parcel as a fixture. This definition appears to us to comport with logic at least with respect to the permanent structures which are involved in the instant case. In addition, the authority cited by appellee seems to support this interpretation. Thus, the depots, stations and switchyards deemed appurtenances in Wilson v. Ward Lumber Co., 67 F. 674, 677 (E.D.Mo.1895), were appurtenant to the right of way upon which they were located. In Humphreys v. McKissock, 140 U.S. 304, 313, 11 S.Ct. 779, 781, 35 L.Ed. 473 (1891), the court held *466 that to be included in a deed as an appurtenance the structure (a grain elevator) must be located on land covered by the deed. In the instant case, the items in issue were not located upon the trackage that was conveyed to PEC.
Appellant next argues that the trial court erred in holding that appellee’s easement gave it the right to destroy the passenger ramp. The trial court held that PEC had the right to remove that which was located within its easement. It relied upon authority cited by appellee which stood for the proposition that because a railroad has a responsibility to insure safety, it must have control of its right of way. This control included the right to prevent incursions by the servient landowner.
Although the record contains ample proof that PEC’s actions were motivated by safety concerns, no authority is offered to support a railroad’s removal of a structure that was in existence at the time the right of way was granted. Appellant argues that the rights and responsibilities contained in an easement are determined at the time the easement is created. See Florida Power Corporation v. Hicks, 156 So.2d 408 (Fla. 2d DCA 1963), pet. cert. denied,. 165 So.2d 177 (Fla.1964). Since half of the structure was on land retained by Seaboard, FEC did not have the right to remove it. As there is no authority to support appellee’s position, it seems logical and we hold that appellant should be allowed to retain the structures located on his land or to require FEC to compensate him for their removal.
The premises considered, we reverse the final summary judgment entered below and remand for proceedings consistent with this opinion.
SMITH and WOLF, JJ., concur.