First Constitutional Presbyterian Church v. Congregational Society.

23  567|
83  147|

THE FIRST CONSTITUTIONAL PRESBYTERIAN CHURCH *et al.* v. THE CONGREGATIONAL SOCIETY *et al.*

1. Church: RESULTING TRUST: AUTHORITY OF ECCLESIASTICAL TRIBU-NALS. While it is true, that courts of law will not enter into the examination or discussion of purely theological questions in order to ascertain the proper beneficiary of a resulting trust, yet, if the trust was created for the benefit of those adhering to a particular denomi-nation, courts of law will accept and follow the determination of the proper ecclesiastical tribunals as to who are adhering and in subor-dination to that body.

2. —— EVIDENCE: RELIGIOUS BELIEF OF GRANTOR. While it may be true, that the religious belief of the grantor of property to the trust-ees of a religious association in trust for certain religious purposes, should not be inquired into for the purpose of ascertaining the nature of the trust, yet the circumstances surrounding the making and acceptance of the conveyance may be, for the purpose of ascertain-ing its object.

3. —— POWER OF MAJORITY: DIVERSION OF TRUST. A majority of the trustees and members of a voluntary association of individuals for religious purposes, have not the power, upon retiring therefrom, and forming with others a new and different religious organization, to control the property of the old association and divert it from the particular purpose to which it was dedicated, by transferring it to the use of the new organization against the desires and opposition of the minority of the old one, who continue to adhere and remain in subordination thereto.   The case of *McBride* v. *Porter* (17 Iowa, 206) illustrated.

First Constitutional Presbyterian Church v. Congregational Society.

*Appeal from Johnson District Court.*

FRIDAY, JANUARY 24.

IN 1841, a number of persons belonging to the religious denomination known as New School Presbyterians, and residing in Iowa City, organized a church called "The First Constitutional Presbyterian Church of Iowa City." Pursuant to their purpose in organizing, the church was united to and placed under the care of and in subordination to the presbytery within the bounds of which it was located, and to the synod embracing it, and to the general assembly of the denomination. This union, care and subordination continued until the occasion of this controversy, in 1866.

On the 27th day of December, 1844, W. W. Woods and wife conveyed to the trustees of said church (naming them), and their successors, forever, a certain part of a lot in Iowa City. The church edifice in controversy is situated on the lot so conveyed, and was built by means contributed therefor, by the members of said church and others favorable to its prosperity, and by loans from the synod of Iowa, and from the church erection fund of the general assembly.

The church also acquired title to another part of a lot in Iowa City, which was conveyed to the trustees and their successors, upon which there had been built, prior to this controversy, a parsonage for said church. Some of the means used in building the parsonage were obtained on a loan from the defendant Charles M. Calkin, who held a lien thereon to secure the same.

In the fall of 1864, the ladies of the church, and those friendly to it, formed a society under the name of "The Ladies' Benevolent society." This society adopted its

constitution and by-laws. By the former, the terms of membership for "any lady" or gentleman, and the officers and their duties, were prescribed. By the latter, the time of meeting, duties of members, etc. were prescribed; and it was also provided that "its benevolent enterprises shall be such as the society by its own vote shall adopt." This society, by the industry of its members in sewing, etc., at their meetings, and by two fairs held by them, accumulated between eight and nine hundred dollars. Prior to the commencement, and during the continuance of the first fair, at which five hundred dollars was made, it was publicly announced that the proceeds were to be appropriated toward the payment of the debts of the church. The petition charges that the funds of the ladies' society are in the hands or control of either Mrs. Benjamin Talbott, or Mrs. S. E. Paine, as treasurer of said society, and on deposit with J. H. Branch, either as an individual, or as cashier of the Iowa City National Bank, and they are all made defendants.

By the constitution of the church, adopted by the members, it was provided that there should be five trustees, and that they should be so elected, in October of each year, as that two of them should hold the office for two years each, and three of them for one year each. The defendants, N. R. Leonard, S. E. Paine, J. H. Branch, William Crum and Benjamin Talbott were trustees from October, 1866.

During the summer of 1866, the members of the church, becoming more or less discouraged by reason of the comparatively large indebtedness and limited membership, and the actual or supposed failure to receive adequate encouragement and support from the boards of the church, formed a purpose to abandon the organization, and to form "The Congregational Society of Iowa City." For this purpose several meetings were held, and the plan being

finally settled upon, at a meeting of the officers (elders) of the church and its members, held on the 16th day of July, 1866, fifty, or about five-sixths of all the members, including four of the trustees and pastor, asked for letters of dismission from the said church for the purpose of uniting with the Congregational Church to be organized in Iowa City; it being stated that the trustees did not want to take their letters until they had settled the pecuniary affairs of the church.

The letters of dismissal were voted to and granted all who asked them, but none were actually issued to any one. But, upon the action of the elders in granting the letters, the members were received into the new organization — the Congregational church. The trustees became incorporators in the Congregational church, attended worship with its members, and contributed to the support of its pastor, etc. But they still claimed to act as trustees of the First Constitutional Presbyterian church, to prevent, as stated in substance by one of them in his testimony, the one-sixth of the membership who refused to disband and go to the Congregational church with the other five-sixths, from obtaining control and retaining the entire property and effects of the First church.

After the disbanding, by vote of the First church, on the 16th day of July, 1866, and the organization of the Congregational church, on the 20th of the same month, the said trustees leased the church edifice, and transferred the pulpit furniture, Sabbath school library and communion service to the new organization, which took possession of, occupied and retained the same. They also, pursuant to a previous agreement, released to Calkin all claim upon the parsonage, in satisfaction of his lien thereon.

On the 22d day of August, 1866, after personal notice to all the members adhering to the First church, a meeting was held for the election of trustees. After the meeting

was organized, the offices of the trustees above named were declared vacant, and thereupon James Cavanaugh, Joseph Love and Nicholas Oaks were elected trustees of the First Constitutional Presbyterian church, and severally accepted the said office. The meeting also declared the lease of the church edifice, and the transfer of the other property to the Congregational church, to be void, as also the arrangement as to the parsonage with Calkin.

This suit was brought by the First Constitutional Presbyterian church, and by Cavanaugh, Love and Oaks, as the trustees and in behalf of the other members, to recover possession of the church edifice and other property from the Congregational church and the trustees thereof, and also to set aside the arrangement with Calkin, and to recover the money from the Ladies' Benevolent society.

The District Court adjudged the arrangement with Calkin to be valid, and quieted his title to the parsonage; that the plaintiffs had no right to the money of the Ladies' Benevolent society; and also that the plaintiffs, Cavanaugh, Love and Oaks, as trustees, were entitled to the possession of the church, the lease therefor being void; that plaintiffs were also entitled to the pulpit furniture, library and communion service, and that each party pay their own costs. From the latter part of this judgment the Congregational society and the old trustees, Leonard, Branch, Crum, Talbott and Paine, appeal.

*Edmunds & Ransom* for the appellants.

*Clark & Haddock* for the appellees.

Cole, J. — There is no appeal from that portion of the judgment of the District Court which quiets the title to the parsonage property in the defendant Calkin; nor from that portion denying plaintiffs' right to the funds of the

Ladies' Benevolent society. The only point made by the appeal is, as to the authority of the trustees, under the particular circumstances of this case, to lease the church edifice and transfer the pulpit furniture, Sabbath school library, communion service, etc., to the Congregational church.

The First Constitutional Presbyterian Church of Iowa City was not a corporation under the laws of Iowa; it was simply a voluntary association of individuals for religious purposes. The trustees were charged with the management of the financial affairs of the society. They held the title to its property in trust for the benefit of the association and for the accomplishment of the purposes of its organization. The rights and powers of the trustees in this case rest upon a different basis from the trustees of religious societies in the State of New York. There the trustees are vested with certain powers by the statute, which, but for the statute, they could not exercise. Hence, the cases of *Robertson et al.* v. *Bullions*, 11 N. Y. 243; *Petty et al.* v. *Tooker et al.*, 21 Id. 267; and other cases cited by appellants' counsel, are not applicable to this case.

*1. CHURCH: resulting trust: authority of ecclesiastical tribunals.*

The conveyance to the trustees of the First Constitutional Presbyterian church, of the property in controversy, was simply to them and their successors in office. There was no express trust created by the language of the deed. If there was a trust attaching to the conveyance, it was a trust resulting from the circumstances and relations of the parties. While it is fully true, that courts of law will not enter into the examination or discussion of purely theological questions in order to ascertain the proper beneficiary of a resulting trust; yet it is clear, that if the trust was created for the benefit of those adhering to a particular denomination, courts of law will accept and follow the determination of the proper ecclesiastical tri-

bunals as to who are adhering and in subordination to that denomination.

That the property in this case was deeded to the trustees in trust for certain religious purposes, is beyond controversy. And while it may be true, that the religious belief of the grantor should not be inquired into for the purpose of ascertaining the nature and extent of the trust (*sed vide The Atty.-Genl.* v. *Pearson*, 7 Sim. 708), yet it is clear, that the circumstances surrounding the making and accepting of the conveyance, may be inquired into for the purpose of ascertaining the object of the trust. To illustrate the idea sought to be conveyed, suppose the trustees in this case had leased the church edifice and property for the purpose of theatrical exhibitions instead of for religious services; would it be contended that they had the right or power so to do? We presume not. And why not? Because such a use would be in clear antagonism to the object and purposes of the conveyance.

And to carry the illustration a little further, suppose a majority of the members, at a meeting held for that purpose, voted to lease the church edifice to be used as a theater, and also voted to allow the minority the same privileges in attending the theater, which the majority were to have. Would it be claimed, that the trustees could even then so lease the church edifice? We think not, simply because such a use would be a clear violation of the trust; and even a majority cannot divest the minority of their right in the property, or of its appropriation to the trust in which such minority have an interest.

When it is said in the decision of cases in the books, as in *McBride* v. *Porter* (17 Iowa, 206), that "where property is held by voluntary associations or corporations, absolutely and with-

*(margin notes: 2. — evidence: religious belief of grantor. 3. — power of majority: diversion of trust.)*

out any limitation, a majority may dispose of, retain or occupy and manage it as they please, admitting the minority to the same benefits as themselves," full force and effect must be given to the words, "*absolutely and without any limitation*," for, if there is any limitation, either express or implied, the rights of the minority are protected by it.

The circumstances surrounding, and relations of the parties to this conveyance, sufficiently imply a trust, that the property shall be used for the purposes of those adhering and in subordination to the religious denomination to which it was conveyed. Some of these circumstances and relations are the organization of the First Constitutional Presbyterian Church *as* a New School Presbyterian church; it was placed in the care of, adhered and was in subordination to, the presbytery, synod and general assembly of that denomination, and so continued for a quarter of a century, and up to the act complained of; it was receiving aid during that time from the boards of that denomination; it had its representation in all the judicatures of that body of Christians; the conveyance was made by a minister of that denomination, who was at the time the pastor of this particular church, to the trustees thereof and their successors forever; the funds for the erection of the church edifice were to a considerable extent obtained from the synod and general assembly of that denomination, etc.

The evidence discloses that the presbytery having jurisdiction of this particular church, has adjudicated that the plaintiffs are adhering and in subordination to it, and that the old trustees, the defendants, are not, but have acted irregularly and disorderly, whereby their offices were vacated. Said presbytery also adjudged that plaintiffs were duly and properly elected trustees under the rules and discipline of that denomination.

In view of all the facts, we have no hesitation in holding that the old trustees of the church have no right to the possession of the property, and that at the time they made the lease, etc., to the Congregational church, they had no rightful power or authority so to do, and that the Congregational church, as such, acquired no right thereby to retain the property as against the plaintiffs.

Affirmed.