### HERVEY v. BUCHANAN.

1. **Corporation**: CONVEYANCE TO. A conveyance of real estate to certain persons named, "and other trustees of the Woodbury Seminary," was *held* to invest the corporation with a valid title to the real estate.

2. ——— : ———. Where the members of a corporation, duly assembled, elected a secretary and performed other functions authorized by their articles of incorporation, the corporation was *held* to have a valid existence, and a conveyance of real estate by an agent, empowered so to do in accordance with the articles, gave a valid title to the grantee.

*Appeal from Woodbury Circuit Court.*

SATURDAY, DECEMBER 15.

ACTION in equity for the purpose of determining the ownership of certain lands described in the petition. There was a finding and judgment for the plaintiff, and defendant appeals.

*Tredway & Cleland* and *Pendleton & Wakefield*, for appellant.

*Swan & Fawcett*, for appellee.

SEEVERS, J.—The petition states that the plaintiff is the owner of the lands in controversy, and has the legal title thereto, the same being unoccupied; that said lands were not assessed for the years 1857, 1858 and 1859, and that there was no valid levy of taxes thereon for said years; that notwithstanding there was no such levy or assessment said lands were sold for non-payment of taxes. One of said sales was made October 3, 1860, for the taxes due for the years aforesaid. The premises were again sold, October, 1867, for the taxes of 1866, and from this sale it was alleged in the petition there had been a redemption by S. P. Yeomans in September, 1870. Notwithstanding which fact the defendant as purchaser at the tax sale procured a deed from the treasurer and placed the same on record. The deed executed in pursuance of the sale made in 1860 was not executed until September 4, 1868, and the same was not recorded until February 16, 1871.

The defendant denied that plaintiff was the owner of the premises in controversy, and alleged that as to the assessments for the years 1857, 1858 and 1859, the defendant has no personal knowledge, but avers that said lands were taxable for said years, and further avers that if said lands were not " duly and properly assessed, or if there were irregularities therein, such failure to assess or such irregularities were caused by the failure of the then owner of said land to comply with the laws pertaining thereto, and were the result of the said owner's own wrong and negligence; but he supposes that the proper and necessary steps were taken by the proper person or persons * * to charge said lands with such taxes as were legally chargeable against said land for said years, and therefore charges such to be the fact, and avers and charges that said lands were duly, properly and legally charged with the legal taxes for said years, and were duly and properly entered on the treasurer's books," and that such treasurer was empowered to collect said taxes as provided by law.

. Further answering, the defendant stated that "he does not know whether S. P. Yeomans redeemed the said lands from the sale of October 3, 1867, or not,     *     *     *     but inasmuch as the treasurer     *     *     *     deeded said land to the purchaser     *     *     under and by virtue of said tax sale     *     *     *     this defendant has reason to believe that said redemption was never made by said Yeomans, and therefore alleges such to be the fact."

I.  It is insisted by the appellant that plaintiff has failed to show any title in himself.  In December, 1859, S. P. Yeo-

1.  CORPORA-  mans was the owner of the premises in controversy, TIONS: con-
veyance to.  and on the 7th day of that month he executed a conveyance whereby he conveyed said premises to " G. Clefford, J. K. Fuller, T. E. Clark *and other trustees* of the Woodbury Seminary and Collegiate Institute, of Woodbury county and State of Iowa."  The plaintiff claims through the "Collegiate Institute," and the defendant claims that under the conveyance the title was vested in Clefford, Fuller and Clark.

The defendant also contends there was no such corporation as the "Woodbury Seminary and Collegiate Institute" at the time the conveyance was made, and that there is no such corporation now.  In the discussion of the present question, however, it will be assumed there was such a corporation, capable of taking and holding real estate through the intervention of trustees, or by gift, grant or devise direct to the corporation.

Where an estate is conveyed expressly in trust for some person or corporation, there is the same necessity of naming in the conveyance the beneficiary as if the grant was intended to be directly to him.  3 Washburne on Real Property, 237. A grant to certain persons as trustees of an incorporated association, or to certain persons as officers of a voluntary association, it has been held vested the title in the persons named as individuals, and that the association had no title whatever. *Austin v. Shaw*, 10 Allen, 553.

There is, however, a clear distinction between a conveyance to a mere voluntary or unincorporated association and a corporation duly constituted according to law.  In the former

there is no person recognized by or known to the law capable of taking the title; in the latter there is.

In *Lowar v. Hale*, 46 Barb., 361, the grantees in the introductory part of the conveyance were described as " Lawrence Riley, James Roy and Michael Miller, trustees of the Methodist society, and to their successors in the town of Lyons and county and state aforesaid, parties of the second part." The grant was to the parties of the second part, and to " *their heirs and assigns forever.*" The *habendum* clause was "to have and to hold the said premises to said parties of the second part, *their heirs* and *assigns*, to the sole and only proper use, benefit and behoof of the said parties of the second part, their heirs and assigns forever." The covenants also ran to the second party, *their heirs and assigns.* It was held that this deed conveyed to the three individuals named as grantees the absolute title, and that the addition to their names of trustees of the Methodist society and their successors, in the absence of the existence of a legally organized religious society of that name, or answering to it, should be rejected for all purposes, except as a description of the persons named as parties of the second part. It will be readily seen this case has but little, if any, application to the case at bar. Here there is a corporation legally organized and readily identified as the beneficiary named in the conveyance. There is also another distinction. In the case under consideration the conveyance is to certain persons named, and " *other trustees.*" Nor are there any such words as *heirs* or *assigns* used, thereby indicating an intent to convey to such persons and their heirs. In accord with the case cited, in some respects, are *Den v. Hay*, 1 Zab., 174, and *Brown v. Combs*, 5 Dutch., 36. While in the last case it was held the legal title was vested in the persons named in the conveyance, it was also held that a conveyance from them to the corporation would be presumed under the circumstances appearing in evidence.

In the *First Constitutional Presbyterian Church v. Congregational Society*, 23 Iowa, 567, the conveyance was to the trustees of said church (naming them) and their successors forever. The church was not a corporation, but simply a vol-

untary association for religious purposes, and it was held "that the property was deeded to the trustees in trust for certain religious purposes is beyond controversy." So here, take this deed as a whole, the intent of the grantor is clear and evident. He intended to and did convey to the trustees of the "Collegiate Institute" the property in question. The persons named took the title in trust for the use and benefit of the institution. Such property was subject to the control of the corporation, to be sold and disposed of by it. And, if necessary to enable it to vest a clear and perfect title in its grantee, a conveyance from the persons named will, in a court of equity, be presumed. The individuals named as trustees could never, in a court of equity, as against the corporation, assert successfully title in themselves; nor do they claim title. The defendant does not claim under them.

II. What purported to be articles of incorporation of the "Woodbury Seminary and Collegiate Institute" were received 2. ——: ——. in evidence. The appellee's amended abstract shows they were recorded in the office of the recorder of Woodbury county on the —— day of ————, 1857. L. M. Brown testified that he was secretary of the board of trustees of said corporation, and had been such since 1870. He produced and identified a book in which was kept a record of the proceedings of the trustees, which was also introduced in evidence, in which the following appears: "The annual meeting of the board of trustees of Woodbury Seminary and Collegiate Institute was held in Woodbury on the second Wednesday of July (the 13th), 1870.     *     *     The meeting was organized by appointing Mr. Foster president *pro tem.* A lengthy discussion was indulged in as to the prospects of the institution, and it was decided by unanimous consent that it was best to return the property to the rightful owners. Thereupon Rev. J. T. Walker was appointed executive agent, and it was resolved that the agent be instructed to quit-claim the property still held by the institute to the original donors or such persons having legal claim upon said property." In pursuance of the authority thus conferred, Mr. Walker, as such

executive agent, conveyed the premises to S. P. Yeomans, the original donor.

The articles of incorporation provide that "the corporation, at any regular meeting of the board, may appoint an executive agent, who shall * * * have full authority to sell and convey or mortgage real estate." This corporation was formed under the Code of 1851, and it is objected that the foregoing is not sufficient to prove the existence of the corporation; that while the articles of incorporation had been duly adopted, there was no proof they "were ever vitalized," and it was not shown they were ever filed in the office of the Secretary of State. Under the Code of 1851 it was not re-quired that the articles of incorporation should be filed in said office unless the object of the corporation was the construction of a work of internal improvement. What is meant by "that the articles were never vitalized," is not defined by counsel. The statute authorized the formation of such corporations and articles were adopted as required thereby. A secretary was elected and a record of the proceedings kept. How extensive the transactions were we are not advised. The corporation, without doubt, had a legal existence and was sufficiently vital-ized to receive donations of property and return the same to the donors, and this is sufficient for the purposes of this action.

III. The foregoing disposes of all matters pressed by coun-sel in their argument. As to defendant's title it is perhaps sufficient to say: *First*, the answer does not sufficiently deny the allegations of the petition as to the levy and assessments for the years 1857, 1858 and 1859; and *second*, this is true as to the allegation that Yeomans redeemed the land from the tax sale made in 1867. Besides this the evidence satisfies us that there was a redemption from said sale. It is also worthy of remark that no deed was taken under the sale made in 1860 until 1868, and that the same was not recorded until 1871, about eleven years after the sale and eight years after the plaintiff was entitled thereto. From these circumstances and the scope of the argument for appellee, we infer the only point of real contest was as to the plaintiff's title.

AFFIRMED.