ROBERT R. REID *et al.*, *Appellants,* v. PATRICK BARRY, BISHOP OF ST. AUGUSTINE, *Appellee.*

Division A.

Opinion Filed April 14, 1927.

SYLLABUS.

1. Prior to the enactment of Chapter 5145, Laws of 1903, now ·Section 3796, Revised General Statutes, the common law rule, that the use of the word "heirs" was ordinarily indispensable to the conveyance of an estate of inheritance prevailed in this State; certain exceptions, however, being recognized, such as deeds to the State, or to corporations, trust deeds, etc.

2. The Act of 1903, now appearing as Section 3796, Revised General Statutes, providing that, regardless of the exclusion of such words as "heirs" or "successors," a conveyance would be construed to pass the fee simple or other whole estate of the grantor unless a contrary intention shall appear in the instrument, was prospective only in its operation; but by an

amendatory Act, Chapter 10170, Laws of 1925, it was made applicable also to prior grants and conveyances. Whether the statute as amended could constitutionally be given a retrospective operation, so as to apply to the deed here in question, made in 1881, held unnecessary to the decision of this case.

3. The purpose of the habendum clause in a deed is to define, or limit, the estate which the grantee is to take, but if the character of the estate conveyed is shown by the granting clause its omission from the habendum is not material.

4. The tendency of modern statutes and decisions, of which our statutes above referred to are instances, has been to depart from some of the arbitrary common law rules formerly obtaining as to the construction of deeds, and to consider the language of the entire instrument in order to determine the intent of the grantor, both as to the character of estate and the property conveyed and to so construe the instrument as if legally possible to effectuate such intent.

5. The general rule is that under a deed creating an express trust the trustees take such legal title as is necessary to or commensurate with the duties of the trust and the equitable estate vested in the *cestui que trust*, without regard to the words of limitation used.

6. While upon a demurrer to the whole bill, such demurrer operates as an admission of the truth of all the allegations of fact well pleaded, as well as the conclusions necessarily resulting from such facts, yet, in passing upon such demurrer, every presumption is against the bill, the pleading being construed most strongly against the pleader.

7. Sections 3791 and 3792, requiring trusts in lands to be manifested and proved by some writing and prescribing how such writing shall be executed, do not apply to resulting or constructive trusts. But as to express trusts, they do apply, and under such statutes, in order for express trusts to be proved for judicial enforcement, such writing must manifest the essential elements of a trust—among which are the

donor or grantor, the trustee, the beneficiary, and the property conveyed for the purpose of the trust—and must be executed by the party creating or declaring the trust in the manner the statute provides.

8. No trust results where both the legal estate and the beneficial enjoyment are vested in the same party. Absolute control and power of disposition are inconsistent with the idea of a trust. The trustees and beneficiary must be distinct personalities or entities, and the merger of both in interests in the same person or entity would effect a legal estate in such party of the same duration as the beneficial interest designed.

9. There must be found within the four corners of the written instruments declaring an express trust, a *cestui que trust*, who must either be expressly named or so designated or described that he can be identified.

10. If a deed intended as a trust deed is made for a valuable consideration, containing covenants of seisin, warranty and quiet enjoyment, and purports to convey the entire estate of the grantor in fee, the grantee paying the consideration for the estate will, as a general rule, take the beneficial interest if the trust fails to be sufficiently declared, or fails in any way, the instrument being conclusive between the parties and their privies, and excluding the idea of any resulting trust to the grantor.

11. Under our statutes, express trusts in reality cannot be proved by parol or enforced against a party who denies the existence of such a trust; nor will parol evidence be heard to engraft an express trust upon a conveyance absolute in terms. Our statutes construed together constitute something more than a mere rule of evidence, and as to such cases as come within their letter and spirit, they in effect go to the enforcible existence of the trust itself.

12. Where the language of a trust deed is free from ambiguity, the donor's or grantor's intention must be collected from the words used by him. But, in keeping with the familiar parol evidence rule applicable to the construction of ordinary

deeds, where the language is ambiguous, the courts will in proper cases admit evidence of the surrounding facts and circumstances, not to contradict, but to explain and determine the meaning and intent of the terms employed by the donor or grantor.

13. If the deed in this case had read merely to "Right Rev. John Moore, Bishop of St. Augustine," the words "Bishop of St. Augustine," not being preceded by the word *as*, might have been merely *descriptio personae*, but the grantee in the deed is "Right Rev. John Moore, Bishop of St. Augustine, Florida, of the County of St. Johns," "and his successors in office and assigns forever," and the deed contains full covenants of seisin, quiet enjoyment and warranty. Held, that it was the plain purpose of this deed to vest the complete legal title in fee, with full power of alienation, in Bishop Moore, and his successors in office, in their official, as contradistinguished from their individual capacities, respectively; and that, as the title was to pass, not to his heirs, but to his successors in office, the use of the word "heirs" would have been as inappropriate and meaningless as in a deed to a corporation, hence the law did not require it.

14. Inasmuch as the deed to "Right Rev. John Moore, Bishop of St. Augustine," "and his successors in office and assigns," does not by its terms manifest any intention to create a trust, and no beneficiary is either named or so designated as that it can be identified, our holding is that the deed does not create or manifest an express trust.

15. While, under the allegations of the bill, and the application of the maxim *id certum est quod certum reddi potest*, we might construe this deed as if it had been expressly made to "Right Rev. John Moore, Bishop of the Diocese of St. Augustine, Florida, of the Roman Catholic Church, and his successors in office and assigns forever," and that, therefore, the grantee and his successors could only take, hold and use the property rightfully in their official capacity, as bishops respectively of the diocese, so that the practical resulting effect of the instrument might be in the nature of a trust, yet, as the language of the instrument, which is not am-

biguous, does not mention nor purport to create a trust, neither allegations nor proof of the canons and customs of the church can be received for the purpose of engrafting upon this deed, which is absolute in its terms, an express trust for the benefit of such church.

16. Even if it be conceded that the deed was made to Bishop Moore as Bishop of the Roman Catholic Diocese of St. Augustine, Florida, and his successors in office and that, therefore, Bishop Moore and his successors could only take, hold, and use the property in their official capacity as bishop respectively of such diocese, and that the City of Orlando, in which the property conveyed was situated, was located within such diocese, this is not enough to create an express trust for the further reason that it cannot be said whether the trust, if any, was for the benefit of the church in Orlando, or throughout the diocese, or for the benefit of the schools or charities of the church, or for the benefit of the Roman Catholic Church in general.

17. In construing the deed referred to in the preceding head-notes, the subsequent use of the property for church, school and rectory purposes by the Roman Catholic Church in Orlando cannot be looked to, to supply the omission of the deed to state the object or purpose of the trust, or to designate, so as to identify, the beneficiary thereof, in order to make the instrument itself manifest an express trust.

18. There is no ambiguity on the face of the deed involved in this case which could properly be explained by parol, so as to make it an express trust. Whatever might be the rules applicable in case of a contest between the Church and the Bishop with regard to the property conveyed, in the light of the canons and customs of the Church, as between the parties to this suit—the heirs of the original grantor and the incumbent successor in office of Bishop Moore—our conclusion is that this is not a trust deed.

19. Under the allegations of the bill, the deed in question cannot be construed as constituting a resulting or constructive trust, nor does the language of the deed create an implied trust, no precatory words being used therein.

20. The deed alleged in the bill, was a deed absolute on its face, made by R and wife in 1881, acknowledging the payment of a valuable consideration, to-wit.: $1050.00, and conveying a certain lot in Orlando, Florida, to the then Bishop of St. Augustine and his successors in office and assigns forever, in their official capacity; and, construing the granting and habendum clauses together, as well as the covenants, it shows that the title in fee simple with full power of alienation was intended to be conveyed, not to or for the benefit of the Church, but to the then bishop and his successors in office and assigns, and that such was its legal effect.

21. While the general rule is that a covenant of warranty cannot enlarge the estate granted or pass by estoppel a greater estate than that expressly conveyed, it is also generally held that where a deed shows by its granting and habendum clauses an actual intention to grant and convey a certain estate, and contains covenant of warranty, the grantor and those claiming under him are estopped from denying the effect of the deed as so intended.

22. It is a general principle running through the law pertaining to the construction of deeds that they are to be construed most strongly against the grantor and most beneficially for the party to whom they are made, and that a deed shall never be held void when its language may be applied, to any lawful intent, to make it good.

23. Aside from the question of estoppel, under the language of the deed in this case, Bishop Moore and his successors in their official capacity had the capacity to take and hold in fee, not in the technical sense of an estate of inheritance capable of descending to the heirs of Bishop Moore, or any of his successors, but a fee simple in the sense of the character of an estate which a corporation takes when a deed is made to it, its successors and assigns.

24. The above construction of the deed here in question is not in conflict with the statute of uses (Sec. 3795, Rev. Gen. Stats.) as it does not provide that the grantee shall stand seized to the use of another, that is, to hold the legal title as a dry and passive trust for another who has the beneficial

interest and estate. Nor is it contrary to the rule against perpetuities, the use of the word "assigns" showing the intention, along with other provisions, to vest a present estate with power of alienation.

25. Florida having by statute adopted the common law, in so far as the same is not inconsistent with our Constitution and statutes, the common law doctrine of the corporation sole, not having been expressly or impliedly repealed by our organic or statutory law, remains in force in this State.

26. At common law, a bishop was a corporation sole, and a deed to the then bishop and his successors in office was construed to convey the fee to such bishop in his corporate capacity, the use of the word "successors" being as necessary to that end as the use of the word "heirs" to the conveyance of an estate of inheritance to a natural person.

An Appeal from the Circuit Court for Orange County; C. O. Andrews, Judge.

Affirmed.

*Dowda* and *Canon* and *Hilburn* and *Merryday,* for Appellants.

*Massey, Warlow* and *Carpenter,* for Appellee.

### STATEMENT.

BROWN, J.—The appellee, Patrick Barry, Bishop of St. Augustine, of the City of St. Augustine, State of Florida, filed a bill in the court below to remove as clouds any claims of the defendants, Robert R. Reid, *et al.,* as heirs, devisees, etc., of Robert R. Reid, Sr., deceased, against certain property in the City of Orlando, Florida. The defendants interposed demurrer, setting up that there was no equity in the bill, and that it affirmatively appeared from

the allegations of the bill that the complainant had no title upon which the relief prayed might be predicated. This demurrer was overruled by the circuit judge, whereupon the defendants took this appeal.

The pertinent portions of the bill are as follows: ''That the Roman Catholic Church is and has been from time immemorial an unincorporated religious organization, and that for the purpose of carrying on its religious work the country has been divided into dioceses and a bishop appointed for each diocese from time to time, with charge over the territory contained within his respective diocese, over which he has charge of the churches belonging to the said religious organization; that the State of Florida, except a small piece of territory in West Florida, which lies within the limits of the diocese of Mobile, composes the diocese which is under the management and control of the Bishop of St. Augustine, and has been since territorial days. Your orator further shows unto your Honor that it is and has been the custom of the said church since long before the years 1881, and up to the present time, to take the title to property it acquires in Diocese of St. Augustine, in the name of the Bishop of St. Augustine for the time being, and his successors in office.

''Your orator further shows unto your Honor that where property is bought by or for the use of the church within the Diocese of St. Augustine, agreeable to such custom, the title is taken in the name of the Bishop and his successors in office, for the use and benefit of the church and its members, in accordance with the custom of the church organization, with power to the Bishop, whenever he sees fit, to sell and dispose of the same for the benefit of the said church organization.

''And your orator further shows unto your Honor that by deed dated May 20, 1881, one Robert R. Reid and Mary C. Reid his wife conveyed unto the Right Reverend John

Moore, Bishop of St. Augustine, Florida, and his successors in office and assigns forever, that certain tract of land situate in the City of Orlando, County of Orange and State of Florida, known as

Block Thirty-three of Robert R. Reid's<br>Addition to Orlando.

which deed contained full covenants and general warranty of title, and that the said John Moore thereupon entered into possession of the said premises and erected a church, a rectory and a schoolhouse, and that the said John Moore and his successors as Bishop of St. Augustine have been ever since in actual possession of the said premises, using them for church, rectory and school purposes ever since, and that your orator is now in actual possession of the same.

"Your orator further shows unto your Honor that the said Robert R. Reid died in or about the year 1900, leaving his Last Will and Testament, wherein and whereby he devised his estate to the defendants Robert R. Reid and Jessie C. Ireland, and to his other heirs, as more fully appears from a copy of his said will hereto attached, marked 'Exhibit A,' which your orator prays may be taken as part of his bill.

"Your orator further shows unto your Honor that the defendants or some of them claim some interest in the said premises by reason of the fact that the said deed was made to the Bishop of St. Augustine, his successors and assigns, and that the word 'heirs' was omitted, and that the said claim of the said heirs of Robert R. Reid constitutes a cloud on your orator's title and tends to render the same unmarketable in his hands.

"Your orator further shows unto your Honor that if the said deed did not operate by way of grant to convey the fee title to the Bishop of St. Augustine and his successors because the word 'heirs' does not appear in the deed, yet

the covenant of general warranty in the said deed binding
the grantors and their heirs forever and warranting the
title unto the said John Moore, Bishop of St. Augustine,
and his successors forever, should, and your orator believes
does, operate by way of estoppel to convey to the church
and its privies the perpetual and beneficial estate in the
land.

"Your orator further shows unto your Honor that the
said John Moore, Bishop of St. Augustine, died on July
30, 1901, and that he was succeeded as Bishop by William
J. Kenny, who afterwards died and was in turn succeeded
by Michael J. Curley, who afterwards became Archbishop
of Baltimore, and that your orator succeeded him as Bishop
of St. Augustine and that he is now Bishop of St Augus-
tine, and successor in title to the said John Moore and as
such is the owner in fee of the said premises for the use
and benefit of the Roman Catholic Church and its mem-
bers."

The deed, which was made an exhibit to the bill, made by
Robert R. Reid and his wife, Mary C. Reid, and dated May
20, 1881, purported to grant Block 33 of Robert R. Reid's
Addition to the Town of Orlando, as shown by recorded
plat therein referred to, to "Right Rev.'s John Moore,
Bishop of St. Augustine, Florida, of the County of St.
Johns," and "his successors in office and assigns forever,"
together with all the estate, right, title, interest, dower,
right of dower, claim and demand whatsoever, as well in
law as in equity, of the said grantors in and to the same;
and the *habendum* clause was in these words: "To have
and to hold the above granted, bargained and described
premises, with the appurtenances, unto the said party of
the second part his successors and assigns to their own
proper use, benefit and behoof forever." The deed further
contained full covenants of seisin, and title in fee simple
of an absolute and indefeasible estate of inheritance, and

of right to convey; also covenant for quiet enjoyment and possession of the property without suit or molestation of the grantors or assigns; also against encumbrances, and full covenant of warranty. The deed was signed and attested by two witnesses and acknowledged by the parties on the day of its date, but was not recorded until July 20, 1923.

BROWN, J., after stating the facts:

The appellants contend that the deed to Bishop Moore, not containing the word "heirs," vested only a life estate in the grantee. If this contention be valid, the life estate was in Bishop Moore with a vested reversionary interest in the grantor, Robert R. Reid, Sr., which passed under his will to his residuary divisees, the grantor having died in 1900 and Bishop Moore the following year, at which time the rights of the reversion so claimed would have accrued. As the bill was filed on September 19, 1924, more than twenty-three years after the death of the alleged life tenant and the accrual of the alleged right of the appellants, and as the bill shows that during this period the property had been in the actual possession of the original grantee and his successors as Bishop of St. Augustine, using the same for church, rectory and school purposes, under color of title, it is contended on behalf of appellee that the facts alleged in the bill show that appellants are barred by the statute of limitations and also show good title in the appellee by adverse possession, (citing 27 L. R. A. (N. S.) 388), rendering this alleged defect in the deed immaterial to the equity of the bill and showing that the court below was without error in overruling the demurrer to the appellee's bill. But the bill, instead of alleging or claiming title by adverse possession, claims title through and under Robert R. Reid, Sr., the ancestor of appellants, by virtue of his deed to Bishop Moore, claiming that such deed conveyed the fee. Such is the gravamen of the bill. Nor can it be said merely

from the facts alleged in the bill that the rights, if any, of the appellants were barred by the statute of limitations, as the bill does not show the age of appellants, or either of them, at the time of the death of their ancestor, or of Bishop Moore, and therefore does not show that more than seven years had elapsed at the time the bill was filed after such possible disability from nonage had ceased. In this state of the pleadings, it becomes necessary for us to consider the contention of appellants above referred to.

Appellants cite the case of Ivey v. Peacock, 56 Fla. 440, 47 So. 481, wherein it was held that, prior to the enactment of Chapter 5145, Laws of 1903, now appearing as Sec. 3796, Rev. Gen. Stats., the use of the word "heirs" was indispensable to the conveyance of an estate of inheritance; suggesting, however, as possible exceptions to this rule deeds to the State, trust deeds, deeds to corporations, etc. In the opinion in that case it was said: "The deed nowhere contains the word 'heirs' or 'heirs of the body', but in the premises grants, bargains, sells, aliens, remises and releases and forever quit claims to the party of the second part the land by appropriate description, and the habendum clause reads: 'To have and to hold the said described property together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, to have and to hold the same in full right, title, interest or demand of what nature soever, as against the said parties of the first part, in fee simple forever.'" In the opinion, which was by Mr. Justice COCKRELL, attention was called to the fact that the deed then under consideration was executed before the enactment of the statute of 1903, above referred to, which statute provides that, "Where any real estate shall *hereafter* be conveyed or granted without there being used in the conveyance or grant any words of limitation, such as heirs or successors, or similar words, such conveyance or shall be

construed to pass the fee simple or other whole estate or interest which the grantor had power to dispose of in the real estate conveyed or granted, unless a contrary intention shall appear in the conveyance or grant.'' In commenting on this statute, the opinion pointed out that it was prospective only in its operation and did not purport to affect prior grants or conveyances. However, since this case was instituted, this statute has been amended so as to apply to *prior* grants and conveyances, as well as those made thereafter. See Chapter 10170, Laws of 1925. As to whether or not this amendatory statute can constitutionally be given such a retrospective operation and effect as to change the character of the deed now under consideration, presents a question of some difficulty which, under our view of this case, it is unnecessary for us to here decide. 12 C. J. 1053, 36 Cyc. 1210.

In the Ivey case it was further said in the opinion: ''The plaintiffs in error rely upon the statement of the law as given in 13 Cyc. 642. The author of the Article on Deeds there asserts that it is generally held essential that the deed read to the grantee and his heirs, but adds, 'It has, however, been held in a large number of decisions that the language of the whole instrument should be considered in order to discover the intent, and that where there is a clear intention to pass a fee simple, the deed will be construed so as to effectuate such intention, although, the word *heirs* or technical words of inheritance are omitted.' An examination of the cases cited in support of the text will disclose, however, that they are founded upon statutes which come within some of the exceptions mentioned above or cases construing wills not deeds.

''The general rule of construction obtaining here as elsewhere that all parts of an instrument will be looked to and that construction adopted that carries out most clearly the evident intent of the parties does not authorize us to

convert a life estate into a fee simple by construction.''

This case was cited with approval in Tyler v. Triesback, 69 Fla. 595, 616, 69 So. 49, as also the cases of Adams v. Ross, 30 N. J. Eq. 505, and Kearney v. Macomb, 16 N. J. Eq. 189. These New Jersey cases held that the omission of the word *heirs* in the granting clause of the deed cannot be aided by the language in the covenant clauses, although the latter evince an intention to convey the fee—that the estate granted cannot be enlarged by the covenants. See also 18 C. J. 297-8, 300, 321; 7 R. C. L. 1144. This rule as to the effect of the covenant does not appear, however, to apply to the habendum clause, the purpose of which is ''to define the estate which the grantee is to take in the property conveyed, whether a fee, life estate, or other interest.'' Devlin on Deeds, 3rd. Ed., Secs. 213, 220. But if the estate conveyed is shown by the granting clause, the habendum is not necessary and its omission of no effect. Sections 213, 214 of same work, and 8 R. C. L. 923, 1044. And if the granting clause and the habendum are in conflict, the former ordinarily prevails, (8 R. C. L. 1045-6) unless it clearly appears that it was nevertheless the intention of the grantor enlarge or restrict the granting clause by the habendum. Devlin on Deeds, Secs. 214, 215a.

The use of the word *heirs* in the granting clause of deeds originated in feudal times, when there was a real reason for so using it, and it finally became a rule of the common law that the use of such word was indispensable in order to convey an estate of inheritance, or in fee simple, for which no synonym could be substituted. 1 Washburn on Real Property, Secs. 84, 85. As, by statute, the State of Florida adopted the common and statute laws of England of a general and not of a local nature, so far as the same were not inconsistent with the Federal or State Constitution or statutes (Sec. 71, Rev. Gen. Stats.), the rule above referred to remained in full force and effect in this State

until the statute of 1903, dispensing therewith, and hence was in effect at the time the deed here in question was made and also at the time of Bishop Moore's death.  Most of the States by statute, and some of them by judicial construction, have long since departed from this rule, and the rule generally adopted has been to consider the language of the entire instrument in order to discover the intent of the grantor, both as to the character of estate and the property attempted to be conveyed, and to so construe the instrument as, if possible, to effectuate such intent. 8 R. C. L. 1037-8; 18 C. J. 253, *et seq*; Sanders v. Ransom, 37 Fla. 457, 20 So. 530; Black v. Skinner Mfg. Co., 53 Fla. 1088, 1090, 43 So. 919; Ausley v. Graham, 73 Fla. 388, 74 So. 505.

Appellee contends, however, that even though the absence of the word "heirs" from the deed made it ineffective to convey a fee simple estate, yet the covenants for quiet enjoyment and of warranty will stop the defendants from asserting title to the land, citing Terrett v. Taylor, 9 Cranch 43, and Mason v. Muncaster, 9 Wheat, p. 454. It was there held that although the deed to the "church wardens" and their successors could not convey to them the fee, inasmuch as there was neither statutory nor common law authority for their capacity to hold lands as church wardens, and they could not take the fee in their natural capacity by reason of the absence of the word *"heirs"* from the deed, yet "the covenant of general warranty in the deed binding the grantors and their heirs forever, and warranting the land to the church wardens and their successors forever, may well operate by way of estoppel to confirm to the church and its privies, the perpetual and beneficial estate in the land."  But an examination of these cases shows that the deed in question in both cases was a trust deed, by its terms, having been made to certain church wardens for the use and benefit of the church in that parish.  Under the laws of Virginia, where those cases

arose, the vestry and the parson of the church were a corporation and the title to all church property was vested in them. It further appears that the land in question was purchased by the vestry of the parish and church for the benefit and use of the church, but in making out the deed the grantors conveyed to certain persons as church wardens for the use and benefit of the church, and it was held that the error in designating the trustees to hold for the use and benefit of the church did not defeat the title of the church. It will have been observed that the deed here in question was not, by its terms, made to Bishop Moore and his successors *for the use and benefit of the church.*

Appellee further contends that the deed here in question was a trust deed, creating a trust in Bishop Moore which passed to his successors in a fee simple estate, rendering the absence of the word *heirs* immaterial; the rule being that a trustee takes a legal estate commensurate with the duties of the trust and the equitable estate vested in the *cestui que trust,* without regard to the words of limitation used. In other words, the trustee will be held to take whatever legal estate is necessary to enable him to carry out the trust. Washburn on Real Property, 6th Ed. Secs. 149, 162; Taylor v. Triesback, *supra;* Christopher v. Mungen, 61 Fla. 513, 55 So. 273, 18 C. J. 299; 34 Cyc. 1156; Smith v. Proctor, 139 N. C. 314, 57 S. E. 889, 2 L. R. A. (N. S. ) 172. In this connection appellee cites the case of Hamlin v. Perticuler Baptist Meeting House, 103 Maine 343, 69 Atl. 315. In this case, the deed did point out the beneficiary of the trust. It was made to two named persons, ''a committ of the society cald Perticuler Baptist, in said town of Bridgeton, or their successors in that office for the time being,'' and the habendum was to these two persons ''and to their successors in office to their use and behoof forever.'' Then followed the covenants of seizen and warranty. The court

in its opinion said: "It was plainly the intention of the grantor to convey the property to the grantees, not in their individual right, but as trustees for the Perticuler Baptist Society, the word 'committ' meaning committee, and being equivalent to trustees, and the words 'successors in office' providing for a continuance of the trust.  No particular words are required to create a trust.  It is a matter of intention gathered from the whole instrument and here that intention is clear.  All the necessary elements exist, the trustees, the beneficiary and the property to be held." It was therefore held that the grantor conveyed an absolute fee simple in trust, the legal title vesting in the committee named and their successors in office, and the equitable title or beneficial interest in the unincorporated religious society known as the "Perticuler Baptist."  Appellee also cites Olcott v. Gabert, 86 Tex. 121; 23 S. W. 985, but in that case it appears that the land was conveyed to the Bishop of the Roman Catholic Church *for the benefit of the church,* and to his assigns and sucessors forever, and it was held that a fee simple was vested in such Bishop in trust for the church.  And in Beckwith, Trustee, v. St. Phillips Parish, 69 Ga. 564, also cited by appellee in this connection, the deed read to E, "of the Protestant Episcopal Church in the Division of Georgia," to have and to hold to him the said E, "Bishop as aforesaid, for the use of the Protestant Episcopal Church in the said Division of Georgia in fee simple," the holding being that this created a trust, which did not attach to the person of E, but to the office of Bishop and passed to his successor in office. There are good many other similar cases in the books, but in all of them the deeds construed appear to have pointed out the beneficiary, that is the church or religious society for whose benefit the Bishop or Trustee named, and their successors in office, were to hold.  In such deeds, the almost unanimous weight of authority is to the effect that the

omission of the word *heirs* is immaterial and that the trustee will take such title as is commensurate with the trust. See note to 2 L. R. A. (N. S.), p. 173, and cases cited in 34 Cyc. 1156, *et seq.* and 26 R. C. L. 1259. It is contended by appellee that the intent to make the deed here in question a trust deed can be gathered from the fact that the grantor was a devout Roman Catholic, as appears from the terms of his will, a copy of which is attached to the bill, and from the further fact that the grantee was the Roman Catholic Bishop of St. Augustine, having jurisdiction of Orlando, which was known to the grantor, who made the deed to the Bishop and his successors in office, and that upon the property conveyed a church, rectory and school were built. But, pretermitting the question of the sufficiency of such allegations if made, the fact remains that the bill nowhere alleges that the deed was a trust deed, or that it was made to the Bishop for the benefit of the Roman Catholic Church, either in the Diocese of Florida or the church or Catholic congregation in Orlando; nor does the bill allege that the grantor was a devout Roman Catholic, and the deed itself is silent as to the purpose for which it was made and the Roman Catholic Church is nowhere specifically named therein. It is true that the bill alleges that the Roman Catholic Church is and long has been an unincorporated religious organization; that in order to carry on its work it has divided the country into dioceses, with a Bishop for each diocese, each Bishop having charge of the churches within his diocese; that the State of Florida, excepting a small territory in West Florida, composes the diocese of St. Augustine, which is under the management and control of the Bishop of St. Augustine and has been since territorial days, and that it has been the custom of the church before and at the time the deed was made to take title to property acquired by it in the Diocese of St. Augustine in the name of the

Bishop of St. Augustine for the time being, and his successors in office, and where property is bought by or for the use of such church within such diocese, agreeably to such custom the title is taken in the name of the Bishop and his successors in office for the use and benefit of the church and its members, with power to the Bishop, whenever he sees fit, to sell and dispose of the same for the benefit of the church organization. But the bill does not allege that the grantor was a member of the Roman Catholic Church, or that he made the deed for any ·of the purposes consistent with the custom above referred to, or that the consideration was paid with the funds of such church, or that the deed was made to Bishop Moore for the benefit of such church While upon a demurrer to the whole bill, such demurrer operates as an admission of the truth of all the allegations of fact in the bill which are well pleaded, as well as the conclusions necessarily resulting from such facts, yet, in passing upon such demurrer, every presumption is against the bill, the pleading being construed most strongly against the pleader. Parker v. Jacksonville, 37 Fla. 342, 20 So. 538; Metcalf Co. v. Orange County, 56 Fla. 829, 47 So. 363; Holt v. Hillman Southerland Co., 56 Fla. 801, 47 So. 934; Capital City Bank v. Hilson, 64 Fla. 206, 60 So. 190. In order to determine whether the bill, in spite of the paucity of its allegations, meets this test, requires some examination of the law of trusts.

Sec. 3791 of the Revised General Statutes, taken from the Florida statute adopted in 1828, and which seems to have come down from the old English statute adopted during the reign of Charles II, provides that all declarations and creations of trust and confidence of or in lands, tenements and hereditaments, shall be manifested and proved by some writing, signed by the party authorized by law to declare or create such trust or confidence, or by his last will

and testament, or else they shall be utterly void and of none effect; but with a proviso to the effect that the statute shall not apply to trusts arising by implication or construction of law. The following section of the Revised General Statutes, 3792, provides that all grants, conveyances, or assignments of trusts or confidences of or in any lands, tenements or hereditaments, or of any estate or interest therein, shall be by deed signed, sealed and delivered in the presence of two subscribing witnesses, by the party granting, conveying or assigning, or his attorney or agent thereunto lawfully authorized, or by last will and testament duly made and executed, or else the same shall be void and of none effect.

An interesting treatment of the effect of these statutes is found in Sections 78 to 111 of the 6th ed. of Perry on Trusts.

In the case of Byrne Realty Co. v. South Florida Farms Co., 81 Fla. 805, 89 So. 318, it was held by this Court that: "A lawful subject-matter and competent parties having appropriate authority in the premises are requisite to the creation of an express trust. In order to create an express trust, the subject, object and terms of the trust must be definitely stated by competent authority; and, in order to be enforced by judicial proceedings, the trust must be evidenced as may be required by law. Where the declaration or creation of an express trust in lands is by statute required to 'be manifested and proved by some writing signed by the party authorized by law to declare or create such trust,' the subject, object, and terms of the trust must be definitely expressed in a writing, executed by an authorized party as the statute provides, or the trust cannot be proved for judicial enforcement. See 39 Cyc. pp. 44, 53, 57; Lines v. Darden, 5 Fla. 51; Floyd v. Smith, 59 Fla. 485, 51 So. 537, 37 L. R. A. (N. S.) 651, 138 Am. St. Rep. 133, 21 Ann.

Cas. 318; 1 Perry on Trusts (6th Ed.) Sec. 79, *et seq.*" The above enunciation is in line with the weight of authority. See 26 R. C. L. 1195, *et seq.*, and cases cited. The authorities are, of course, practically unanimous in holding that these and similar statutes have no application to resulting or constructive trusts. Thus it was held in Gale v. Hardy, 20 Fla. 171, that: "Parol testimony is admissible to show that the grantees in a deed of conveyance of land absolute on its face, purchased as trustees, with a knowledge of the trust, that the cash paid at the time of the purchase was money realized from the sale of the trust property, and that subsequent payments of the balance of purchase money due was money realized from the use of the property purchased with the trust fund. A purchase with trust funds is virtually a purchase paid for by the *cestui que trust*. Such a purchase is a trust by operation of law, not within the statute of frauds, and the fund may be followed so long as its general character can be identified. Where the grantees admitted the trust, and that the purchase was made with trust funds, as well as that they held as trustees, the trust arises by operation of law based upon presumed intention of the parties, and is a resulting trust." This holding is also in line with the weight of authority as shown by cases cited in 26 R. C. L. 1214, 1227, *et seq.*, and 39 Cyc. 104, 108, *et seq.* But it is not alleged here that this was a resulting trust.

Another pertinent doctrine of the law of trusts upon which this Court has made a clear announcement will be found in the case of Axtell v. Coons, 82 Fla. 158, 89 So. 419, wherein it was held: "A fundamental essential to the existence of any trust is the separation of the legal estate from the beneficial enjoyment; and no trust can exist where the same person possesses both. If the legal and equitable estates come together in the same person, the

equitable is merged in the legal, and the trust is terminated. Absolute control and power of disposition are inconsistent with the idea of a trust.  *  *  *  The trustee and the beneficiary must be distinct personalities, or otherwise there could be no trust, and the merger of both interests in the same person would effect a legal estate in him of the same duration as the beneficial interest designed.''

It is well established that there must be found within the four corners of written instruments creating or declaring a trust a *cestui que trust.* ''It is not necessary to name the beneficiary, but he must be so designated or described that he can be identified.'' 26 R. C. L. 1189. In Sec. 95 of Perry on Trusts it is said, ''Wherever a valuable consideration is paid, a contract will be executed as near to the intention of the parties as possible; as where for a valuable consideration a man executed a deed of land purporting to be under his hand and seal, but no seal was affixed, by reason of which defect the legal title did not pass, the Court held that the defective deed might be used as a declaration of trust, and that the holder of the legal title should hold it in trust for the grantee in the deed and that he should be ordered to convey; and where a husband for a meritorious consideration conveyed personal property directly to his wife, by deed, which could not operate, because a husband cannot convey directly to his wife, the Court ordered the deed to stand as a declaration of trust for the wife, and the husband's representatives to hold the legal title in trust for her. The authorities establish this proposition; that where there is a valuable consideration the Court will enforce the trust, though it is not perfectly created, and though the instruments do not pass the title to the property, if from the documents the Court can clearly perceive the terms and conditions of the trust, and the parties to be benefited. In such cases, effect is given to the

consideration to carry out the intentions of the parties, though informally expressed. But if no *cestui que trust* is named, or so designated that he can be identified, the Court cannot carry a trust into effect, however clearly it may be created in other respects." And in Sec. 151 of the same work, this language occurs: "If a conveyance has been made upon a valuable consideration, there can be no resulting trust to the grantor, as the payment of valuable consideration imports an intention to benefit the grantee in case the trusts declared fail, or are imperfectly declared, or do not take effect for any other reason. See also, to like effect, Sec. 158, id., where it is said: "But if the conveyance is by deed for a valuable consideration, the grantee will take the beneficial interest if the trust fail to be declared, or fail in any way; for there can be no resulting trusts (to the grantor) where the grantee pays a valuable consideration for the estate." And in Sec. 162, id., we find: "*A fortiori* a trust deed cannot be turned into a resulting trust for the grantor by proof that it was without consideration. And when a deed contains covenants of warranty, no use can result to the grantor, for such covenants estop him from claiming any legal or beneficial interest in the estate." As was said in Semple v. Semple, 105 So. 134, in the opinion of Mr. Justice ELLIS: "The declaration of the use to the grantee and his heirs in the *habendum,* assuming the conveyance to have been in the common form, is conclusive between the parties, and excludes any resulting trust to the grantor."

Of course, in this and other jurisdictions having statutes substantially similar to ours, trusts in realty cannot be proved by parol, and hence cannot be enforced against a party who denies the existence of such a trust; nor will oral proof be heard to engraft an express trust on a conveyance absolute in terms. Perry on Trusts, Sections 76 and 79;

26 R. C. L. 1202, *et seq.;* 39 Cyc. 46, 81, *et seq.;* note to Jackson v. Cleveland, 90 Am. Dec. 270, 277. But a parol trust is not in all cases an absolute nullity. The party sought to be charged may admit it, even in cases where the *cestui que trust* could not enforce it, and the Courts will usually protect the trustee in the execution of the trust, if he chooses so to do, and as far as possible protect the beneficiaries in the enjoyment of the fruits of its execution. Secs. 76 to 85, id. And in Sec. 82, it appears that "if there is competent written evidence that the party holding the legal title is only a trustee, that will open the door for the admission of parol evidence to explain the position of the parties." The text of 26 R. C. L. 1197, lays down the rule that "the defense that a trust is void under a statute of frauds must be left to the party charged with the trust, and those holding under such party." But whatever may be the rule as between the trustees, *cestui que trust,* when there is a dispute concerning the existence of the trust or where its existence is shown by competent written proof and the dispute is as to the meaning or scope of the trust (see Secs. 82, 85, id.), we apprehend that when the question of the existence of the trust arises between the *cestui que trust* or alleged trustee and other parties, the mere admission of the trust by the trustee would not, in the absence of proper written evidence, be sufficient to establish its legal existence. Our statutes (3791-2, Rev. Gen. Stats.) construed together constitute something more than a mere rule of evidence. As to such cases as come within their letter and spirit, they in effect go to the existence—or at least to the enforceable existence—of the trust itself. While parol evidence will not be admissible to vary or contradict or add to the terms of the written instrument relied on to create or prove a trust, in construing such an instrument the usual rules as to the admissibility of extrinsic evidence to affect

writings apply. That is, where the instrument is free from ambiguity, the donor's grantor's intention is to be collected from the words used by him. But, it is said by some of the text writers on this subject that where it is impossible to ascertain the intention of the trustor from the language used, the Court will consider all the surrounding circumstances of the case, and, when proper and necessary, it will receive parol evidence for the purpose of ascertaining the intention of the parties (26 R. C. L. 1180, 1202, 1252, 1256) ; applying the familiar parol evidence rule sometimes resorted to in the construction of the language used in deeds, i. e., that they will when necessary be construed in the light of the surrounding circumstances and attendant existing state of facts, the relationship of the parties, etc. (18 C. J. 261; 8 R. C. L. 1041), never to vary or contradict the plain intent of the language used, but, where it is ambiguous, to enable the Court to understand and determine the meaning and intention of the grantor when he employed it. Horn v. Gartman, 1 Fla. 63; Bellamy v. Bellamy, 6 Fla. 62; Andrew v. Watkins, 26 Fla. 390, 7 So. 876; McNair & Wade Land Co. v. Adams, 54 Fla. 550, 45 So. 492; Black v. Skinner Mfg. Co., 53 Fla. 1088, 43 So. 919; Elliott v. Conner, 63 Fla. 408, 58 So. 241; Wofford v. Dukes, 67 Fla. 118, 64 So. 451; Ansley v. Graham, 73 Fla. 388, 74 So. 505. Fla. Moss Products Co. v. Leesburg, decided at the present term.

No particular form of words is necessary to create a trust, and whether one exists is to be ascertained from the intention of the parties as manifested by the words used and the circumstances of the particular case. Colton v. Colton, 127 U. S. 300, 32 L. Ed. 138; 39 Cyc. 57; 26 R. C. L. 1180.

It has been held in a number of cases that "a deed to a bishop for the benefit of the church and to his successors and assigns forever" vests a fee simple title in such bishop

in trust for the church, in the absence of any condition subsequent, express or implied; but that the trust attaches to the office of bishop, and not to the person, and therefore passes to his successor. Doan v. Vestry, etc., 103 Md. 662, 64 Atl. 314, 7 L. R. A. (N. S.) 1119 and note; Antones v. Eslava, 9 Porter (Ala.) 527; Georgetown Meth. Society v. Bennett, 39 Conn. 263; Church of Redemption v. Grace Church, 6 Hun. (N. Y.) 166; Olcott v. Gabert, *supra;* Beckwith v. St. Philips Parish, 69 Ga. 564; Moore v. Gross, 54 Ia. 248, 6 N. W. 290; Scott v. Thompson, 21 Ia. 599; 34 Cyc. 1156; 23 R. C. L. 451. In cases where the purpose and scope of a trust in behalf of a church was in question, as bearing on the question of the intention of the donor as to the faith or tenets of the beneficiary church, the language being indefinite, it has been held that extrinsic evidence as to the faith of the donor, or of that actually taught by the donees at the time of the donation in trust, and the circumstances under which the gift was made, were admissible in ascertaining the intention. Miller v. Gable, 2 Denis (N. Y.) 492; Robertson v. Bullions, 11 N. Y. 243; Ayers v. Weed, 16 Conn. 291; Knickern v. Lutheran Churches, 1 Sand. Ch. Rep. (N. Y.) 439; Presby. Church v. Congregational Society, 23 Ia. 567.

In Mannix v. Purcell, 46 Ohio St. 102, it was held that when land was conveyed by deed absolute on its face to a named grantee, "his heirs and assigns," it could be shown by extrinsic evidence that such grantee was in fact the archbishop of the Roman Catholic Church of the diocese in which the property was located, and that under the canons and decrees of such church regulating the method of acquiring and holding church property, the property so conveyed was held by him in trust for the purposes of religious worship and other charitable uses, and that the courts would assume control to prevent the abuse or perversion of such

trust. But in that jurisdiction, as stated in the opinion, "parol evidence may be resorted to to engraft a trust upon a title held by deed absolute upon its face," while with us this can only be done in cases of resulting or constructive trusts.

On the other hand, it was held in McHugh v. McCloe, 97 Wis. 166, 64 Am. St. Rep. 106, that a bequest of certain property to the Roman Catholic Bishop of the Diocese of Green Bay "to be used" by him "for the benefit and behalf of the Roman Catholic Church" was void for uncertainty as to the beneficiary, it not appearing what church or body was designated or intended—whether the Roman Catholic Church of any particular city, state or diocese, or the Roman Catholic Church throughout the world.

In the case at bar, if the deed had read merely to "Right Rev. John Moore, Bishop of St. Augustine," the words "Bishop of St. Augustine" not being preceded by word "as," might have been merely *descriptio personae* (see State v. Gray, 111 So. 242), but the grantee in the deed is "Right Rev's John Moore, Bishop of St.Augustine, Florida, of the County of St. Johns," "and his successors in office and assigns forever." It is the plain purpose of this deed to vest the complete legal title, with full power of alienation, in Bishop Moore, and his successors in office, in their official, as contradistinguished from their individual, capacities, respectively. 2 Perry on Trusts, Sec. 703. As the title was to pass, not to his heirs, but to his successors in office, the use of the word "heirs" would have been inappropriate and meaningless; hence the law would not require it. As Blackstone tells us, when the reason for a rule ceases, the rule itself ceases;—*cessante ratione legis, cessat et ipsa les.* In this instance the use of the word heirs, in the sense of their essentiality to the granting of a title in fee, is as unnecessary and futile as it is in the case of deeds to corpo-

rations. The deed is made upon a valuable consideration and is absolute in its terms. Certainly there is nothing in it to indicate a purpose on the part of the grantor to retain any right, title or interest in or control over the land or the use to which it should be put. It evidences the clear intention to convey to the grantee in his official capacity a full title in fee and (if he did not dispose of it) after him to his successors in office. Unless it creates a trust, the effect of the deed was to transfer the grantor's title and vest it in fee in the grantee in his official capacity, provided the grantee had the capacity to take and hold such title.

As to the trust feature, in the light of our own statutes and decisions and those of other jurisdictions, and the comments of the text writers, we are clearly of the opinion that this deed does not create, or "manifest," an *express* trust. Neither the terms, nor the purposes, of a trust are stated, and no beneficiary is "named or so designated as that he can be identified." It is true that under the decisions, and the allegations of the bill, as well as the familiar maxim, *id certum est quod certum reddi protest,* we might construe this deed as if it had been expressly made to "Right Rev. John Moore, Bishop of the diocese of St. Augustine, Fla., of the Roman Catholic Church, and his successors in office and assigns forever"; that therefore the grantee and his successors could only take, hold and use the property rightfully in their official capacity as bishops respectively of the diocese, and that Orlando was in that diocese. It might also be admitted that, as such bishops, the probabilities are that they could only hold, use or dispose of the property for church purposes—their official station being itself a church purpose, and their just powers as bishops being to act for and on behalf of the church. So the resulting effect of the instrument is in the nature of a trust, though by its words no trust is mentioned. This is not enough to create an

express trust. It cannot be said from the deed whether the trust, if any, was for the benefit of the existing church at Orlando, or one to be formed there, or for the benefit of the church throughout the diocese, or for the benefit of the schools or charities of the church, or for the benefit of the Roman Catholic Church in general, or for the special benefit of the then bishop and his successors in their official capacity—such as to provide a residence for the bishop. The subsequent use of the property for a church, school and rectory of the Roman Catholic Church in Orlando cannot be looked to, to supply the omission of the deed to state the object or purpose of the trust, or to name, or designate so as to identify, the beneficiary of the trust, in order to make the instrument itself manifest an express trust. Whatever may be the rules that might be applicable in case of a contest between the church and the bishop with regard to this property, construed in the light of the laws and customs of the church, etc., or with regard to the question of a resulting trust, if such had been here alleged or relied upon, we are clear in our conclusion that this deed, under the allegations of the bill, does not create or prove the existence of an express trust for the benefit either of the Roman Catholic Church, in general, or the church in Orlando, or in or for the diocese of St. Augustine; or for any other purpose. In addition to the authorities cited, see also Wardens and Vestry v. Bagley, 138 N. C. 384, 70 L. R. A. 160; Dillage v. Greenough, 46 N. Y. 438; Filkins v. Severn, 127 Iowa 738; Atwater v. Russell, 49 Minn. 57; Jackson v. Cleveland, 90 Am. Dec. 270, 277.

There is no ambiguity on the face of the deed which could properly be explained by parol, so as to make it an express trust. It is merely a deed, for a valuable consideration, absolute on its face, to the then Bishop of St. Augustine and "his successors in office and assigns forever," in their

official capacity; and both the habendum and covenants show that the full legal title was intended to be conveyed, not to the church, but to the then Bishop and his successors in office. United Brethren Church v. First M. E. Church, 138 Ill. 608; Cairns v. Hay, 21 N. J. Law, 174; Brown v. Combs, 29 N. J. Law, 36; Towar v. Hale, 46 Barb. (N. Y.) 361; Austin v. Shaw, 10 Allen (Mass.) 552; Andrews v. Atlanta Real Estate Co., 92 Ga. 260.

Nor does the language of the deed create an implied trust. Trusts of this nature are said to arise from the construction of wills or settlement *inter vivos*. Implied trust arise "when a testator employs words *precatory, or recommendative,* or *expressing a belief.*" Thus, if he "desire," "will," "request," "will and desire," etc. Lewin on Trust, 148; Perry, Sec. 112. "As ordinarily classified and defined, implied trusts are subdivided into the two classes, resulting and constructive; but by some authorities the term 'implied trust' is used in a sense exclusive of these two classes. Where the term is so used, four distinct classes of trusts are recognized, namely, express, implied, resulting and constructive; and under this classification implied trusts are defined as trusts that the court imply from the words of an instrument, where no express trust is declared, but such words are used that the court infers or implies that it was the purpose or intention of the parties to create a trust." See 39 Cyc. 25, 26, and cases cited. Some authorities doubt that implied trusts of this nature are excepted from the operation of the statute of frauds. Garrell v. Alspaugh, 120 N. C. 362, 366; Verzier v. Convard, 75 Conn. 1. It can hardly be argued that the language of this deed necessarily implies the intention to create a trust, for any particular purpose, or for the benefit of any particular beneficiary, none being named, and there being no precatory words contained therein. Furthermore, as this court has said, "Absolute control and power of disposi-

tion,'' which we think this deed by its terms vested in the grantee ànd his successors, ''are inconsistent with the idea of a trust.''

Now, as to the capacity of the grantee to take legal title under the deed, the first consideration which presents itself is, can the defendants, claiming under and in privity with the grantor, raise this question? ''When a deed shows by a recital or covenant that there was an actual intention to grant and receive a certain estate, the parties are estopped from denying the effect of the deed as so intended.'' Devlin on Deeds, Sec. 944, citing a number of cases. And in Sec. 952 of the same work it is said, ''an estoppel of course, will arise from a covenant of warranty.'' And in 21 C. J. 1067, this appears: ''A person who assumes to convey an estate by deed is estopped, as against the grantee, to assert anything in derogation of the deed. He will not be heard for the purpose of defeating the title of the grantee, to say that at the time of the conveyance he had no title, or that none passed by the deed, nor can he deny to the deed its full operation and effect as a conveyance.'' And in 10 R. C. L. 676-7, it is said: ''A grantor is generally estopped from denying the title of his grantee, or his authority to sell. * * * A grantor of lands with full covenants of warranty is estopped to claim any interest in the granted premises.'' But, it is added, a covenant of warranty ''cannot enlarge the estate granted or pass by estoppel a greater estate than that expressly conveyed.''

However, as above shown, this deed, independent of the warranty, expressly purported to convey the fee, and all of the estate in the property held by the grantor of any nature whatsoever. One of the headnotes to Horn v. Gartman, 1 Fla. 63, reads: ''There is one general principle that runs through the construction of deeds—that they are to be construed most beneficially for the party to whom they are made; and secondly, that a deed shall never be void when

the words may be applied to any intent, to make it good.''
To like effect, see Sec. 848, Devlin on Deeds.   Thus it has
been held that a grantor was estopped to deny the capacity
of the grantee to take, where he made a deed to corporation
named as grantee, the incorporation of which was not
completed until subsequently, Reinhard v. Va., etc., Mining
Co., 107 Mo. 616, 28 A. S. R. 441; Bradwell v. Merritt, 87
Mo. 99.   It is also the general rule that the State alone can
take advantage of a clause in the charter of a corporation
prohibiting it from holding land; a grantor to the corpora-
tion cannot question the capacity of the corporation in this
respect.   Devlin, Sec. 121; 14 C. J. 233; and cases cited.   It
appears therefore that the appellants were estopped.

But aside from the question of estoppel by deed to deny
the capacity of the grantee, we are of the opinion that
Bishop Moore and his successors in their official capacity
had the capacity to take and hold in fee under this deed—
not in the technical sense of an estate of inheritance which
was capable of descending to the heirs of Bishop Moore, or
any of his successors, but a fee simple in the sense of the
character of estate which a corporation takes when a deed
is made to it, its successors and assigns.   On reason and com-
mon sense, we think this holding is correct, and we find
nothing in the books to the contrary.   It is true, that ordi-
narily an estate in fee simple is an estate of inheritance, one
that will descend to the grantee's heirs if he die before
alienation thereof.   Washburn Real Prop., 137.   But ''from
the nature of corporations,'' a conveyance to them ''will
be understood as a fee without words of limitation.''   And,
''if it be a corporation sole, it must be limited to such cor-
porator and 'his successors,' which in case of corporations,
answers to 'heirs' in cases of grants to natural persons, or
it would be an estate only for life of such corporator.''
Washburn, Real Prop. 153.   ''Most persons, natural and

artificial, may be parties to deeds. The chief exceptions that the law has found have arisen from the disabilities of infants, persons insane or mentally incapable, married women, aliens and corporations.'' Reeves on Real Prop., Sec. 1088; Jones Real Prop., Sec. 156, *et seq.* And the author goes on to show that practically all of the disabilities referred to apply to the grantor's capacity to *make,* rather than to the grantee's capacity to *take.* As is said by Devlin, Sec. 116, ''The capacity of a grantee is less restricted than that of a grantor.'' See also Sec. 120a of Devlin on Deeds.

In the case of United Brethren Church v. First M. E. Church, 138 Ill. 608, it was held that a deed to A, B and C, trustees of the United Brethren Church, and their successors in office, and assigns in the City of Moline, to have and to hold to said parties ''and their successors and assigns forever,'' with covenants, was a conveyance, not to the corporation, but to the individuals named as trustees; that it was not a conveyance to them in trust for the church, and hence the statute of uses, which applies only to express trusts, did not operate to vest the title in the church; that therefore the legal title was in the grantees named. But this case does not go to the extent of holding that such legal title, in case it had not been alienated, would pass to the successors of such trustees. In fact, in this aspect of the matter, we have found no case on all-fours with the case at bar. It is of course well settled as a general rule that only natural or artificial persons (corporations) can take title to land, and that unincorporated charitable or religious organizations cannot themselves take by deed title to lands; and hence it is customary to convey to their officers or trustees and their successors, for the use and benefit of such organization, in which case such officers or trustees and their successors take and hold the legal title in trust with

power of alienation. If they can hold as such officers or trustees, in succession, the legal title for the unincorporated society, where the deed shows such a trust, why may they not be able to so take and hold for themselves in their official capacity where the deed creates no express trust in behalf of the society, and yet shows an unmistakable intention to convey to them and their successors in their official rather than in their individual capacities? It may be that in such a case the grantee in such deed takes neither as an individual only, nor as an artificial entity only, but partly in the nature of both—the official position, which is quasi-corporate in its nature, being for the time incarnated in the man holding it, and acting through him.

In the case of Beckwith v. Rector, Wardens, etc., 69 Ga. 564, already referred to, in a learned opinion by Speer, J., having under consideration a deed to E., "of the Protestant Episcopal Church in the division of Georgia," "to have and to hold the said bargained premises unto him, the said Stephen Elliott, Jr., bishop as aforesaid, for the use of the Protestant Episcopal in said division of Georgia, in fee simple," etc., it was held that such trust did not attach to the person of Elliott, but to the office of bishop, and passed to his successors in office. It was said in the opinion that it had been held that a bond payable to Gilmer, governor, and his successors in office, was payable to the officer and not to the individual. It was further held that the subsequent incorporation of the church did not divest the title of the bishop. But this case is not directly in point, because the deed was expressly to the bishop "for the use of" the church in the division of Georgia. There are cases holding that deeds to certain persons as officers or trustees of unincorporated associations operate to vest the title in such officers or trustees as individuals. See Sections 237 of Jones on Real Prop. There are others holding that

where the deed does not create a trust, the words ''trustee,'' or ''officers'' ''and their successors,'' will be treated as *description personae* only, and others holding that where it was the manifest intention that the party named should take only in the capacity named, and not individually, the intention of the grantee should be allowed to prevail. See generally 18 C. J. 275, 276. A study of the authorities and reported cases, from the above standpoint, none of which appear to be identical with the facts alleged in this bill, leads to the conclusion that no clear rule governing this case in the respect above considered can from the decided cases be definitely pointed out. And yet, it seems entirely possible to give effect to the plain language and intent of the deed, which was for a valuable consideration, to vest the title in fee, without restrictions of alienation or conditions subsequent, in Bishop Moore as bishop of St. Augustine and his successors in office, and assigns, without conflicting with any of our statutes. There is no conflict with the statute of frauds, as above shown. Nor is there any conflict with the statute of uses (Section 3975, Rev. Gen. Stats., 1920), as it does not provide that the grantee shall stand seized to the use of another,—that is, hold the legal title as a dry and passive trust for another who has the beneficial interest and estate. 26 R. C. L. 1171, *et seq.*, 18 C. J. 154. Nor is the deed contrary to the rule against perpetuities, the use of the word ''assigns'' showing the intention, along with other provisions, to vest a present estate with power of alienation. 30 Cyc. 1476. When there is neither constitutional provision, nor statute, nor binding principle of the common law, nor recognized rule of construction, which stands clearly in the way, a Court should so rule as to do justice between the parties, which is the great purpose of the law, though sometimes difficult to achieve in unusual and unanticipated cases and situations. Upon this basis,

we should certainly give effect to the plain intention of the grantor as shown by the language used in the deed, and hence uphold the title of Bishop Patrick Barry, as the successor of Bishop Moore. The land was paid for. No doubt the price of $1,050.00 was considered a good one in those early days. And the wording of the deed shows beyond a doubt that Mr. Reid, Sr., intended to convey the title to the then Bishop of St. Augustine and his successors, without the remotest indication of any idea that his children should have the right at any future time to take it away from them.

But even if the deed in question here could not be sustained upon any of the grounds above mentioned, it would appear to be sustainable upon an old doctrine of the common law, namely, that of the "corporation sole." As hereinabove referred to, in another connection, the State of Florida adopted, by statute, the common law, in so far as the same is not inconsistent with our Constitution and statutes. Both our Constitution and our statutes provide means for the formation of corporations aggregate, but we find nothing in either Constitution or statutes which either expressly or impliedly repeals the ancient common law institution of the "corporation sole." Blackstone, in Book I, p. 470, tells us. "The first division of corporations is into *aggregate* and *sole*. Corporations aggregate consist of many persons united together into one society, and are kept up by a perpetual succession of members, so as to continue forever; of which kind are the mayor and commonalty of a city, the head and fellows of a college, the dean and chapter of a cathedral church. Corporations sole consist of one person only and his successors, in some particular station, who are incorporated by law, in order to give them some legal capacities and advantages, particularly that of perpetuity, which in their natural persons they could not have had. In this sense, the king is a sole

corporation; so is a Bishop; so are some deans, and pre-
bendaries, distinct from their several chapters; and so is
every parson and vicar.'' And on page 472 he further
says: ''But, with us in England, the King's consent is
absolutely necessary to the erection of any corporation,
either impliedly or expressly given. The king's implied
consent is to be found in corporations which exist by force
of the *common law,* to which our former kings are supposed
to have given their concurrence; common law being noth-
ing else but custom, arising from the universal agreement of
the whole community. Of this sort are the king himself,
all Bishops, parsons, vicars, church-wardens, and some
others; who by common law have ever been held as far as
our books can show us, to have been corporations, *virtute
officii*; and this incorporation is so inseparably annexed
to their offices, that we cannot frame a complete legal idea
of any of these persons, but we must also have an idea of
a corporation, capable to transmit his rights to his suc-
cessors at the same time.'' In Vol II, pp. 273-4 of Kent's
Commentaries, 13th Ed., we find the following: ''Corpora-
tions are divided into *aggregate* and *sole.* A Corporation
sole consists of a single person, who is made a body cor-
porate and politic, in order to give him some legal capaci-
ties and advantages, and especially that of perpetuity,
which, as a natural person, he cannot have. A Bishop,
dean, parson, and vicar are given in the English books as
instances of sole corporations; and they and their succes-
sors in perpetuity take the corporate property and privi-
leges; and the word 'successors' is generally as necessary
for the succession of property in a corporation sole, as the
word 'heirs' is to create an estate of inheritance in a private
individual. A fee will pass to a corporation aggregate,
without the word successors in the grant, because it is a
body which, in its nature, is perpetual; but, as a general
rule, a fee will not pass to a corporation sole, without

the word 'successors,' and it will continue for the life only of the individual clothed with the corporate character. There are very few points of corporation law applicable to a corporation sole. They cannot, according to the English law, take personal property in succession, and their corporate capacity, in that respect, is confined to real property.'' See also Coke's Littleton 8b, 9b, 46b, 94b; 1 Kyd on Corporations, 76-77; Angel and Ames on Corporations, 11th Ed., Sec. 27; 7 R. C. L. 43; 7 Am. & Eng. Encyc. of Law, 635.

It is true that the doctrine of a sole corporation has never received much recognition in America. However, it was held in Western v. Hunt, 2 Mass. 501, that a minister of the parish seized of lands in right of the parish, was a sole corporation. To like effect, see Brunswick v. Dunning, 7 Mass. 444. And in the case of Overseers of the Poor v. Sears, 22 Pickering (Mass.) 122, Chief Justice SHAW gives an interesting treatment of corporations sole, as distinguished from corporations aggregate. At the risk of unduly lengthening this opinion, we quote one paragraph: ''It becomes then necessary to consider, what are the distinctions established by law, between a sole and an aggregate corporation. The first and the most important is, that corporation aggregate has a perpetual existence without change, so that an estate once vested in it, continues vested without interruption. Whereas, when a bishop or parson, holding estate as a sole corporation, dies, or resigns his office, the fee is in abeyance, until a successor is appointed. From this flows one necessary, but obvious legal consequence, which is, that a grant to an aggregate corporation, carries a fee, without the word 'successors;' but a grant to a corporation sole, without including successors, carries a life estate only to the actual incumbent, who is the first taker. Co. Lit. 8b, 9b, 94b; 4 Cruise's Dig. 442. A life estate to an ideal being having a perpetual and unin-

terrupted existence, must be coextensive with a fee or perpetuity, and words of limitations could not extent it. But where property vests in a bishop, parson, or other sole corporation, he holds it to his own use and benefit, whilst he holds the office, and afterwards the estate and the enjoyment of it, go together to his successor, when established. The transmission of the estate is perpetual, but the beneficial enjoyment changes at each succession.''

The existence of the corporation sole is also recognized in the following cases; Santillan v. Moses, 1 Cal. 92; Archbishop v. Shipman, 79 Cal. 288; Chiniquy v. Bishop of Chicago, 41 Ill. 148 (this case apparently founded on statute); Thomas v. Dakin, 22 Wendell (N. Y. Com. Law) 9, 101, 106; Rine v. Wagner, 135 Iowa 626, 631; McCloskey v. Doherty, 97 Ken. 300.

That the common law, corporation sole is, under our statute adopting the common law, the law in Florida today, seldom as it may be called into operation, there can be no doubt; and its application to this case is inescapable, and removes all doubt as to the capacity of the grantee and his successors to take the fee simple title. But whether we recognize the appellee, complainant in the court below, in his capacity as bishop, as a corporation sole or not, the analogy to the common law corporation sole is so complete as to bring him within the spirit and reason of the doctrine relating thereto, and indicate our conclusion on the other grounds mentioned. For the reasons above pointed out, we find no error in the action of the court below in overruling the demurrer to the bill, and the order appealed from will therefore be affirmed.

Affirmed.

ELLIS, C. J., AND STRUM, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.